JOHN R. PULSIFER *vs.* ISAAC D. WATERMAN.

Androscoggin. Opinion March 7, 1882.

*Fraudulent conveyance. R. S., c. 113, § 51. Exceptions. Statute of frauds.
Equity powers of Supreme Judicial Court.*

Where the maker of a promissory note, before its maturity, conveyed his farm to his son in fraud of his creditors and died, and his estate was decreed

insolvent before judgment was recovered on the note, in an action by the payee against the fraudulent grantee, founded on R. S., c. 113, § 51; *Held*, that the fact that the farm could not be attached or seized on execution by the payee, is no defense, the farm having been attachable or seizable when the relation of debtor and creditor was created.

The receipt by the payee of his dividend of the estate, was no abandonment of his remedy under § 51.

Nor is it any legal objection to the maintenance of such an action, that the plaintiff will recover more than a *pro rata* share of his debt.

Where to such an action the defense was *inter alia* that the conveyance was not fraudulent as to creditors, but in pursuance of an oral contract entered into between the defendant and his father some years before, and the presiding justice instructed the jury that it was immaterial whether the alleged oral contract was valid or not; *Held*, that the defendant had no cause for exceptions when it appeared that the jury found that no such contract was in fact made.

A part performance by the purchaser, of an oral contract for the sale and purchase of land, may take the contract out of the operation of the statute of frauds, and authorize a court of general equity powers, in the exercise of a sound discretion, to decree specific performance on the part of the vendor.

Since February 28, 1874, the Supreme Judicial Court of this State, has possessed general equity powers and authority to decree specific performance of oral contracts.

On exceptions, and motion to set aside the verdict.

An action on the case under the provisions of R. S., c. 113, § 51, against the defendant for aiding in the fraudulent transfer and concealment of certain real estate of Jabez Waterman, the father of the defendant, and a debtor of the plaintiff.

The relation of debtor and creditor between Jabez Waterman and the plaintiff, was shown by a note dated February 8, 1877, in which one C. A. Foster was the maker, Jabez Waterman was the payee and first indorser, and the plaintiff was the second indorser. It went to protest April 12, 1877, was paid by the plaintiff, and passed into a judgment against Waterman's estate, at the September term, 1878.

The alleged fraudulent conveyance was a deed of real estate from Jabez Waterman to the defendant, dated February 16, 1877, and recorded April 6, 1877.

Jabez Waterman died April 2, 1877, and his estate was rendered insolvent.

The defendant *inter alia*, claimed and testified that the deed from his father to him of February 16, 1877, was in pursuance

of a contract and agreement made between them in 1846, that if the defendant would stay with his father and "see him and mother through," and assist in paying certain debts, the defendant was to have one-half the property, and the father would give him a deed any time he wished it.

Other material facts stated in the opinion.

*W. W. Bolster*, for the plaintiff, cited: R. S., c. 113, § 51; c. 66, § 23; *Spaulding* v. *Fisher*, 57 Maine, 411; *Hovey* v. *Chase*, 52 Maine, 304; *Darby* v. *Hayford*, 56 Maine, 246; *Laughton* v. *Harden*, 68 Maine, 210; *Pratt* v. *Curtis*, 6 N. B. R. 139; *Oxnard* v. *Swanton*, 39 Maine, 125; *Cunningham* v. *Horton*, 57 Maine, 420; *Soule* v. *Winslow*, 66 Maine, 477.

*N. and J. A. Morrill*, for the defendant.

Supposing the alleged fraud on the part of Jabez Waterman, and the alleged knowledge of the same on the part of the defendant to be proved, yet the case shows such a state of facts, by reason of the death of Mr. Waterman, senior, and the insolvency of his estate, as will not entitle the plaintiff to aid in this action; the legislature did not contemplate the application of this statute to such a case, and such an application would be unjust and inequitable to other creditors. The statute prescribes certain conditions within which the creditor must bring or find himself before he can maintain an action thereunder. *Quimby* v. *Carter*, 20 Maine, 221; *Herrick* v. *Osborne*, 39 Maine, 232. The property must be such as would be liable, but for the conveyance or transfer, to be taken by the creditor in the particular manner named, to satisfy his demand; for the conveyance of exempted property, no matter if the debtor was ignorant of the law and had ever so fraudulent intent, would furnish no ground for an action under the statute.

There has not been a moment since the plaintiff's claim against Jabez Waterman became certain, that he has had, or could in any way have had, any distinct portion of Jabez Waterman's property applied toward the satisfaction of his debt; his rights as a creditor, are only in common with all other creditors, to have the property applied *pro rata* to the satisfaction of their

debts. The case differs from *Spaulding* v. *Fisher*, 57 Maine, 411 ; there the money had been liable to attachment and seizure, although the house was not ; here, no property has ever been so liable on plaintiff's claim. That an executor or administrator acting as the representative of the creditors could avoid any fraudulent transfer of property personal or real, and apply it or its value to the satisfaction of creditors' claims cannot be doubted, but the remedy is exceedingly simple, aided by the provisions of R. S., c. 64, § 65, as amended by laws of 1874, c. 168, and not by the statute here relied upon.

Such an application of the statute is contrary to the provisions and policy of the law for the distribution of the estate of persons deceased, insolvent, and in its application would be wholly inconsistent therewith. *Caswell* v. *Caswell*, 28 Maine, 234 ; R. S., c. 71, § 22 ; *Thatcher* v. *Jones*, 31 Maine, 532 ; *Philbrook* v. *Handly*, 27 Maine, 55 ; *Platt* v. *Jones*, 59 Maine, 244.

No creditor has a right to apply property to the payment of his individual debt as against other creditors of an insolvent estate, but it would be just as inconsistent to allow him to obtain payment under this statute. If the executor through ignorance or collusion with a single creditor, neglects to sell the real estate, as land fraudulently conveyed, or by the aid of a court of equity, obtain a cancellation of the fraudulent conveyance (as he may do, *Caswell* v. *Caswell*, *supra; McLean* v. *Weeks*, 65 Maine, 418 ; *Holland* v. *Cruft*, 20 Pick. 321 ; *Welsh* v. *Welsh*, 105 Mass. 229,) such creditor, although unable by suit directly against the debtor's estate to satisfy his debt by levy on such property, may by suit against the party holding the conveyance, obtain an execution to be satisfied out of the same property, and thus obtain payment of his claim in preference to other creditors. Suppose that, in case the property in question be personal, the executor being unable to reach it, has brought suit for its value and recovered judgment, (*Martin* v. *Root*, 17 Mass. 222 ; *Gibbens, Adm'r,* v. *Peeler*, 8 Pick. 254 ; R. S., c. 64, § 37,) or, in case it be real, has by process in equity set aside the conveyance, whereby the property is lost to the grantee, still under the plaintiff's theory he may yet be liable to this action at the suit of a

creditor, and in the first case would be obliged to pay three times its value, (twice to the creditor and once to the executor,) or, if the property could be reached, twice its value and lose the property.

The defendant is entitled to have the property, but he must pay twice its value and no more. *Fogg* v. *Lawry*, 71 Maine, 215.

The plaintiff by taking his dividend from the estate of Jabez Waterman, thereby abandoned other remedies and cannot now maintain this action. See *Trimbell* v. *Woodhead*, U. S. S. C. Reporter, April 27, 1881; (102 U. S. 647); *Martin* v. *Root*, 17 Mass. 228; Bigelow on Estoppel, 535, *et seq.*; *Chaffee* v. *Bank*, 71 Maine, 514; *Rapalee* v. *Stewart*, 27 N. Y. 314; *McLean* v. *Weeks*, 61 Maine, 280; also 65 Maine, 417; *Caswell* v. *Caswell*, 28 Maine, 232.

We think the evidence in regard to the contract, should have been submitted to the jury for the purpose of determining Jabez Waterman's intentions, as well as the defendant's honesty or dishonesty.

The residence of Isaac D. Waterman on the home place, the improvements that he made upon it, bring this case within the rule that courts of equity will enforce a specific performance of a contract within the statute of frauds, where the parol agreement has been partly carried into execution. 1 Story's Eq. Jur. 12 ed. § 759, and note 1; *Potter* v. *Jacobs*, 111 Mass. 32; *Lobdell* v. *Lobdell*, 36 N. Y. 327; *Kurtz* v. *Hibner*, 8 Am. Rep. 665, (Ill.); *Hardesty* v. *Richardson*, 22 Am. Rep. 57 (Md.); *Burkholder* v. *Ludlam*, 32 Am. Rep. 669; *Neales* v. *Neales*, 9 Wall. 1; *McDowel* v. *Lucas*, Reporter, May, 25, 1881. This rule seems to be well established in courts having full equity jurisdiction. In *Wilton* v. *Harwood*, 23 Maine, 133, the court say, that if it were "intrusted with a general jurisdiction in equity, there might be no difficulty in decreeing a specific performance of the agreement, on the ground of part performance by the delivery and acceptance of possession, accompanied by the other acts above stated." Such jurisdiction was given by laws of 1874, c. 175.

VIRGIN, J.   Case, to recover the amount of the defendant's liability under R. S., c. 113, § 51, for knowingly aiding his father, Jabez Waterman, in an alleged fraudulent transfer of the latter's farm, to secure it from creditors and to prevent its attachment and seizure on execution.

The relation of debtor and creditor which subsisted, at the time of the conveyance, between the grantor and the plaintiff, depended upon the contingent liability of a prior, to a subsequent indorser of a negotiable promissory note.   Such a liability established that relation (*Thatcher* v. *Jones*, 31 Maine, 528, 532) ; and it became fixed when the note was executed by the parties and put in the bank.   *Sargent* v. *Salmond*, 27 Maine, 539, 542–3 ; *Thompson* v. *Thompson*, 19 Maine, 244 ; *Howe* v. *Ward*, 4 Maine, 195.   And although the liability was still conditional when the grantor deceased, it survived against his personal representative and ripened into an absolute indebtment against his estate, and the relation was not affected by his decease.

At the trial before the jury, the defendant contended, and being there overruled, now ably urges that, assuming the conveyance to have been fraudulent, still, inasmuch as the debtor died before his debt was payable and his estate was decreed insolvent before judgment was recovered, the farm could not be " seized on execution," and therefore the facts on which the plaintiff bases his action are not such as are contemplated by the statute.

It would seem to be a self-evident proposition that, such property of a debtor as, by positive statute provision, is exempted from attachment or seizure for the owner's debts, is not susceptible of fraudulent alienation ; for no creditor can, in legal contemplation, be defrauded by his debtor's conveyance of property which is intangible by any civil process in behalf of such creditor.   *Legro* v. *Lord*, 10 Maine, 161, 165.   And doubtless if the farm in question had been worth but five hundred dollars instead of twenty-five hundred dollars, and the debtor had seasonably filed the homestead certificate in accordance with the provisions of R. S., c. 81, § § 60 *et seq.* the plaintiff would have no legal cause to complain of the conveyance.

And prior to 1839, for a similar reason any of those classes of property which could not be taken on execution at law, such as

the interest of a mortgagee of land or of chattels, the incorporeal and intangible right of an inventor or an author in a patent or copyright, notes, accounts, bonds, etc. might be transferred with impunity, and creditors not be able to impeach the transaction at law as being in violation of the stat. of 13 Eliz.; and there is high authority for declaring that equity would not intervene. 1 Story Eq. § 367, and notes. But in that year, the legislature provided a method by which a judgment creditor, whose judgment debt was at least ten dollars, might reach with his execution, unless the debtor preferred perpetual imprisonment, " any property, not exempted expressly by statute from attachment." Stat. 1839, c. 412, § 2, incorporated into R. S., c. 113, § 14. And since the enactment of that statute this court has assisted through its equity powers, judgment creditors in discovering and reaching their debtors' property which could not be seized on execution at law, and especially such as had been fraudulently transferred and secreted. *Gordon* v. *Lowell,* 21 Maine, 251; *Sargent* v. *Salmond,* 27 Maine, 539, 546–7. And now, notwithstanding the *dictum* in *Skowhegan Bank* v. *Cutler,* 49 Maine, 315, all those kinds of property not specially exempted from attachment, and which before the statute of 1839 could not be taken on execution, are deemed property for the fraudulent transfer of which the fraudulent transferee is liable under the provisions of the statute on which the action at bar is founded. *Spaulding* v. *Fisher,* 57 Maine, 411.

The farm conveyed to the defendant was not exempt from attachment or seizure by any statute. To be sure it could not be seized on execution as the debtor's property, not because it was exempt as that phrase is generally used and understood, but because before the judgment was recovered the estate of the debtor had been decreed insolvent, and that decree dissolved all attachments of it (R. S., c. 81, 65), and prevented the issuing of any execution on the judgment. R. S., c. 66, § § 16, 17.

If the defendant had, before the maturity of the note, conveyed the farm to a *bona fide* purchaser, it is familiar law that the farm then could not be attached or seized on execution by the plaintiff on his debt; but the defendant's learned counsel would

hardly contend that that fact would constitute a defence to this action. In either case, the farm was attachable and seizable within the meaning of § 51. For whether attachable or seizable depended not upon its situation when the plaintiff's action was commenced upon the note or the judgment recovered, but when the relation of debtor and creditor commenced, viz: when the note was executed and delivered. From that moment the creditor, although his debt was not payable, had a right to complain against any fraudulent transfer of any property of his debtor which was then attachable; for he "had an interest in it as a fund out of which the debt ought to be paid." *Howe* v. *Ward,* 4 Maine, 200. If the law were otherwise, any debtor might convey his property before maturity of his debts and leave his creditors without remedy. "Such a consequence is not to be disregarded, nor a principle leading to such a consequence to be respected in a court of justice." *Howe* v. *Ward, supra.* So that we may reiterate the language of the court in *Quimby* v. *Carter,* 20 Maine, 221, invoked · by the defendant, that the plaintiff must prove : "that he has a just debt or demand, that his debtor has fraudulently concealed or transferred property liable to be taken by attachment or seized on execution to satisfy it, and that the person sued has knowingly aided the debtor to defeat his right as a creditor."

But the defendant says that when the plaintiff proved his claim and took his dividend, he thereby abandoned his remedy under § 51.

In the first place he did not prove his claim before the commissioners, and they had nothing to do with it. His action was pending in the Supreme Judicial Court when the estate was declared insolvent; and instead of discontinuing his action and resorting to the commissioners, he recovered a judgment in this court; and the statute (c. 66, § § 16, 17,) "entered the sum on the list of debts."

This is altogether different from the facts in *Fogg* v. *Lawry,* 71 Maine, 215. The plaintiff in that case, after commencing his action under § 51, filed a petition in bankruptcy against the defendant on which the latter was declared a bankrupt, caused the

assignee to bring a bill against the defendant (fraudulent grantee) to recover the property conveyed; and the court decided that the plaintiff thereby waived his remedy under § 51. When the plaintiff voluntarily became a party to the proceedings in bankruptcy, he thereby elected to take whatever percentage the bankrupt estate would pay and thereby cease to be a creditor; and ceasing to be a creditor, he could have no claim under § 51. *Thatcher* v. *Jones*, 31 Maine, 528, 533. But the receipt of a dividend from an insolvent estate of a deceased person does not discharge the debt. R. S., c. 66, § 23. Nor is there any analogy between a creditor's merely accepting a dividend under the insolvent statute, and becoming a party to an assignment for the benefit of creditors; and *Chaffee* v. *National Bank*, 71 Maine, 514, is not applicable.

The aim of bankrupt and insolvent statutes is to make a just and equitable *pro rata* distribution of debtors' property among their creditors and assignees charged with this duty receive the authority to pursue property conveyed by a debtor in fraud of creditors. *Freeland* v. *Freeland*, 102 Mass. 475; *Glenny* v. *Langdon*, 98 U. S. 20; *Trimble* v. *Woodhead*, 102 U. S. 647. And for the same purpose executors and administrators, when the estates of their testators and intestates have been decreed insolvent, have alone the same authority, as the representative of all having an interest in the distribution. *McLean* v. *Weeks*, 61 Maine, 277; S. C. 65 Maine, 411; *Caswell* v. *Caswell*, 28 Maine, 232. But there seems no power to compel action on the part of a personal representative as there is under the bankrupt law (*Trimble* v. *Woodhead, supra*); the only remedy (in the opinion of Tenney, C. J.) being to remove the administrator in case of his refusal and the appointment of some one who will act. *Caswell* v. *Caswell*, 28 Maine, 235. But these cases have no application to an action brought under the express unconditional provisions of a statute in no wise pertaining to the insolvent estates of deceased persons.

But it is urged that inasmuch as the executor can maintain a bill and recover the whole farm for the benefit of all the creditors,

'the defendent, if this action is sustained, may be obliged to pay twice its value and lose it also ; thus subjecting him to a greater penalty than the statute inflicts and contrary to the decision in *Fogg* v. *Lawry, supra.* This result cannot follow in this case, neither will it in any other. Section 51 is remedial, "enacted to enable creditors to recover their debts." *Quimby* v. *Carter,* 20 Maine, 218 ; *Platt* v. *Jones,* 59 Maine, 244. Whatever is recovered in this action operates *pro tanto* as payment of the debts of the debtor although not paid by the debtor. *Quimby* v. *Carter, supra; Philbrook* v. *Handley,* 27 Maine, 55. If the plaintiff recovers his debt by this action and a bill is subsequently brought for the benefit of the other creditors, equity does not lend its aid to enforce penalties, but tempers the wind to the shorn lamb and would adjust its decrees to suit the equitable liability of the defendant.

If it be said that in this way the plaintiff would recover all of his debt while the other creditors would not fare so well ; the answer is such a result not infrequently happens even in equity. "It is a well established principle," says WHITMAN, C. J., "when a creditor has, through the instrumentality of a court of equity, sought out and discovered the property of his debtor, which he had before been unable to discover and seize upon execution at law, that he becomes entitled to a preference over other creditors, to have his judgment first satisfied, even under the insolvent laws." *Gordon* v. *Lowell,* 21 Maine, 251, 257. To the same purport are *McDermutt* v. *Strong,* 4 Johns. Ch. Cas. 687, and the numerous cases cited by Ch. KENT in that case, and in *Thompson* v. *Brown,* 4 Johns. Ch. Cas. 619.

In *Fletcher* v. *Holmes,* 40 Maine, 364, 368, where a bill in equity brought by an administrator in behalf of the creditors to obtain property belonging to his intestate, was defeated by reason of not having exhausted legal remedies, the court suggested that the creditors there had the remedy now pursued by this plaintiff.

We now come to the two exceptions taken to instructions in the charge.

After stating to the jury the principal issue, whether the grantor, when he made the conveyance, intended thereby to defraud,

delay or hinder his creditors; if he did not, this action could not be maintained; but if he did, then whether the defendant, knowing of such intention on the part of the grantor, accepted the deed for the purpose of aiding or assisting him in carrying it out, the presiding justice proceeded to call the attention of the jury to the alleged contract, telling them that the defendant put in evidence of it "to show that he was entirely honest in the transaction," that the plaintiff claimed no such contract was ever made while the defendant claimed there was, and instructed the jury to ascertain "whether it was true or false; if false, it does not necessarily give the case to the plaintiff;" but if false, "to ascertain how far it bears upon the question of fraud in taking the conveyance." Thereupon, in the same connection, he proceeded to give the instruction first excepted to, viz: "Whether that contract was a legal one, if made, is not of consequence here. It is only of consequence so far as this: if a man accused of a fraud, as this defendant is, puts in a false explanation of his transactions, of his acts which are claimed to be fraudulent, the jury have a right to consider that as bearing upon the question of his honesty, for the simple reason that when a man is honest in his transactions, when he is honest in the acts which are in question, the truth will answer his purpose better than falsehood. Therefore, for that purpose, and for no other, you will examine this evidence with regard to that contract, to see how far it is true or false." Then after telling the jury to consider all the testimony upon both sides and to reconcile the conflicting testimony so far as they found it necessary and proper, the presiding justice gave the following instruction (excerpts from which constitute the defendant's second exception to the charge) viz: "The question in regard to that contract is not whether it was valid, not whether it was binding upon the parties, because that is not material; because if it was not binding upon the parties, the grantor could have refused to fulfill, if it was binding, then he could fulfill it. That is not the issue before us; it is only whether he has set up the truth in justification, or whether he has set up a falsehood; and then say how far that bears upon the question of fraud. . .

. . If it was an honest transaction, no matter whether there

was any consideration for it or not; the property itself might be open to attachment, but the party to the deed could not be mulcted in double damages until he is proved to have acted fraudulently."

All these instructions obviously relate to the question, whether or not any such oral contract as the defendant set up, was ever in fact made between himself and his father; and the jury must, under the instructions, have found for the plaintiff on that issue. And on that issue, it was immaterial whether it was valid or binding upon the parties. And, of course, if no such contract was made, there was no occasion for the court to instruct the jury as to its validity upon the main issue. We fail, therefore, to perceive wherein the defendant could have been aggrieved by the instruction, so far as the objection raised by the defendant is concerned.

But there is another view equally fatal to the exceptions. Assuming what the case nowhere shows, that the defendant contended below that the deed was made to carry out the oral contract which being taken out of the statute of frauds by part performance on the part of the defendant, it was proper for the jury to consider it, if valid, on the question of the grantor's intention in making the conveyance; and assuming, against the finding of the jury, that the contract, as testified to by the defendant, was actually made, we still think the defendant was not aggrieved by the instruction that the validity or invalidity of the contract was immaterial.

The general rule has long been settled that a part performance by the purchaser, of an oral contract for the sale and purchase of land, may take the contract out of the operation of the statute of frauds, and authorize a court of general equity powers, in the exercise of a sound discretion, to decree specific performance of the contract on the part of the vendor. 2 Story's Eq. Jur. § 259 *et seq.* 1 Sugd. Vend. (8th Am. ed.) c. 18, § 7. 4 Kent's Com. 451. Browne, Frauds, § 452. This is said to be upon the ground that one party shall not interpose the statute of frauds to defraud the other party, it appearing that it would be a fraud upon the latter who has acted in good faith relying that the former would do the same, if the contract is not completed. And although this court has heretofore, on account of limited equity

powers, declined to decree specific performance of oral contracts, (*Stearns* v. *Hubbard*, 8 Maine, 320; *Wilton* v. *Harwood*, 23 Maine, 131; *Bubier* v. *Bubier*, 24 Maine, 42,) still since February 28, 1874, when there was conferred upon the court "full equity jurisdiction, according to the usage and practice of courts of equity in all cases where there is not a plain, adequate and complete remedy at law," specific performance of oral contracts is within the equity powers of this court. St. 1874, c. 175; *Wilton* v. *Harwood, supra*; *Potter* v. *Jacobs*, 111 Mass. 32.

But whether the alleged contract was such as the court in its discretion might enforce is immaterial to our present inquiry; for the proposition cannot be successfully maintained that the conveyance did in fact fulfill on the part of the grantor the oral contract. All the witnesses of the defendant upon that subject matter testify with noticeable uniformity as well as unanimity that the defendant was to "have one-half of everything right through;" but the deed conveyed in fact more than three-quarters of the real estate and there were only seventeen dollars' worth of personal.

The defendant does not press his motion, and we think there is ample testimony on the part of the plaintiff to support a verdict in his behalf, if the testimony is true, as the jury, who saw the witnesses, have declared by their verdict. And it is considerable less in amount than the evidence would warrant; but of this fact the defendant has no reason to complain.

*Motion and exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and SYMONDS, JJ., concurred.