In the Matter of the Final Accounting of LEVI BRADBURY, as Executor, etc., of JERUSHA M. SHERMAN, Deceased.

ERIE SHERMAN and Others, Appellants; WESLEY C. ROWLEY, Respondent.

*Services rendered in expectation of compensation — they afford a consideration for a note in excess of their real value.*

While mere gratuitous services are an insufficient consideration for an executory agreement or promise, the performance of services and the furnishing of board and valuable things, not as a gratuity but in expectation of being compensated therefor, is sufficient in the absence of fraud to sustain a promissory note for an amount in excess of the real value of the services performed or things furnished.

APPEAL by Erie Sherman and others, from so much of a decree of the Surrogate's Court of the county of Chemung, entered in said Surrogate's Court on the 27th day of July, 1904, settling the accounts of Levi Bradbury, as executor, etc., of Jerusha M. Sher-

man, deceased, as directs the allowance and payment to Wesley C. Rowley of $4,336.75, the amount of a claim presented by him against the estate of Jerusha M. Sherman, deceased, and also from a decree entered in said Surrogate's Court on the 12th day of July, 1904, adjudicating the validity of the said claim.

*J. A. Gibson* and *W. E. Knapp*, for the appellants.

*H. H. Rockwell*, for the respondent.

CHASE, J.:

The respondent on the 9th day of June, 1903, duly presented to said executor a claim against the estate of the deceased consisting of a promissory note with interest thereon from its date, of which note the following is a copy:

"$4,150.00                    WEBB'S MILLS, *Nov.* 16*th*, 1899.

"On demand I promise to pay to the order of W. C. Rowley four thousand one hundred fifty dollars. Value received. Interest one per cent.

"(Signed)   J. M. SHERMAN."

On June 11, 1903, the executor rejected said claim, and thereafter a written consent was duly filed by the claimant and said executor that said claim be heard and determined by the surrogate of Chemung county upon the judicial settlement of the account of said executor. On said judicial settlement of the executor's account the claim was contested by the executor and by the appellants as residuary legatees on the grounds: *First.* That the decedent never signed and delivered said note. *Second.* That if said note was ever signed and delivered there was no consideration therefor.

The executor was sworn and testified that Rowley told him that he received the note from his aunt (decedent) by mail in a letter or envelope, directed to his address in New York, and that his aunt had promised him that he should have certain moneys that were collected from a note which she held against the estate of her first husband; that she required the interest on it while she lived and after that he was to have it for his kindness in helping her.

The decedent was for many years the wife of one Tobey. Tobey on the 1st day of January, 1887, gave to his wife, the decedent, his note for $4,000 with interest at one per cent. He died March 11,

1894, leaving a will, in and by which he appointed decedent and
one Levi Bradbury, executrix and executor thereof. Decedent did
not leave any children. The claimant was her nephew and a
favorite with her. She remained part of the two winters following
Mr. Tobey's death at the home of the claimant who was then keep-
ing house with his mother, a sister of decedent. More than six
years had expired after the note which she held against her hus-
band was given when he died. Decedent presented a claim on the
note to her coexecutor. It was necessary for her to prove her
claim in the Surrogate's Court. The respondent claims that the
decedent believed that the note was uncollectible. Payments had
been indorsed on the note by her and the proof and allowance of
such payments were necessary to prevent the Statute of Limitations
from running against her claim on the note. Claimant herein did
some work and performed some services for decedent in connection
with proving the debt in the Surrogate's Court and having the
same allowed as a claim to her. The amount was $4,194.85, and
the same was paid to her September 19, 1895. About two years
after the death of her first husband, decedent married one Sherman.
Sherman died in 1897, and decedent died on the 2d day of March,
1902. She left a will by which she made said Levi Bradbury
executor, but the claimant was not mentioned therein. There was
a contest over her will, but it was admitted to probate. At the
time when the note in question bears date claimant was employed
in New York by a photographer. An employee of said photog-
rapher testified that in the fall of 1899 he received the mail from
the carrier at said photographer's and that he remembers receiving
a letter for the claimant and taking it to him, and that he saw
claimant open the letter and take out a note which he handed to
him (witness) and he read it and remembered that it was a note for
$4,150, and he also remembered the name that was signed to it.

One witness, an old neighbor of the decedent, testified that a few
days before Thanksgiving in 1899 she was at the home of the
decedent, and her testimony as to what the decedent said to her is
as follows: "Well, then she talked about her money what she was
going to do with it and what she had done with it; she said I have
just sent Mr. Rowley my note for that amount of money that he
collected for her — of a note that Mr. Tobey had given her years

before, and she had sent it to him as a debt she owed him for services rendered her in collecting — helping collect this note, and for two winters that she lived with him here in the city after her husband died, when her first husband, Mr. Tobey, died, and for services she said that was rendered her, and she spoke that she intended to leave Mr. Rowley the bulk of her property and as he — I have always thought of him as son of. my own, that is the substance of the conversation."

Decedent's brother testified that decedent told him in the fall of 1897 that she had but little property to give to anybody, and she further said, "The heft of her property Wesley C. Rowley will be entitled to, as I intend to give him the heft of my property," and he testified that in a further conversation which he had with her in January, 1902, a few weeks before her death, she said to him that Rowley had assisted her in collecting a note of $4,000, and she felt as though she wanted to make him good, and, therefore, she had sent him a note for that amount.

The executor testified that the decedent repeatedly said to him that the parties named in her will would be greatly disappointed as they would not receive much, because she had made other arrangements with her money. Decedent made a will prior to the date of the note to Rowley in which she made a substantial bequest to Rowley, but after the date of the note she made two wills in neither of which was Rowley mentioned. The executor of her will testified that in making one of these later wills she asked him to figure up the amount that would be left after paying certain legacies mentioned in that will; that he did so, and said to her that there would be quite a large amount to be divided among the residuary legatees, and decedent replied that there would be but very little, if anything, because she had made other arrangements in regard to her money; that she further said that there was a big debt that he knew nothing about.

On the trial the executor and appellants called a witness who had seen the decedent write, who testified that in his opinion the signature to the note in question was not the signature of the decedent, and they also called two professional experts in handwriting and each testified that in his opinion the signature to the note in question was not the signature of the decedent.

The claimant called a professional expert in writing and two bank officers residing in Chemung county, who had for years been accustomed to examine signatures to determine in regard to their genuineness, and he also called one of the residuary legatees and the executor of the will, both of whom had for years been familiar with decedent's writing, and each testified that in his opinion the signature to said note was the signature of the decedent.

It is insisted by the appellants and by the claimant that the surrounding circumstances tend to show the correctness of their claims respectively.

We have carefully examined the record and the original exhibits before us, and we conclude, without here stating the facts with more detail, that the findings of the surrogate that the note was executed and delivered by the decedent and that there was a sufficient consideration therefor, are sustained by the evidence.

On the 9th day of December, 1903, the attorneys for the claimant and the executor respectively entered into a stipulation that an order be entered directing that a commission issue to examine under oath claimant's mother, as a witness, in Kansas, in the matter of the claim of Rowley. The order was entered and the commission issued and was executed. The deposition was returned and filed in the Surrogate's Court of the county of Chemung on the 15th day of December, 1903. On January 12, 1904, the executor petitioned for an accounting, and a citation was issued returnable February first. A special guardian was appointed for an infant residuary legatee, and by consent the further hearing in the proceeding was postponed until March 1, 1904. The person named as special guardian of the infant residuary legatee is an attorney at law, and he was employed generally by the residuary legatees, who are the appellants herein, in September, 1903, and he was consulted by the attorneys for the executor at the time when the stipulation for the order directing that a commission issue was signed, and the order and the interrogatories to be attached to the commission were submitted to him before they were finally completed. No motion has ever been made to suppress the deposition. When the deposition was about to be read in evidence the special guardian objected thereto on various grounds, including an objection that the court had no jurisdiction to issue the commission. The court overruled the objections on the

ground that as there had been sufficient time therefor any objection thereto should have been taken by motion to suppress the deposition.

If we assume that the deposition should not have been read in evidence, we are nevertheless of the opinion that, as this court has the same power to decide the questions of fact that the surrogate had (Code Civ. Proc. § 2586), and we think that the findings should be affirmed on the evidence apart from the deposition, the error, if any, should not reverse the judgment.

Apart from the opinion of three witnesses that the signature to the note is not the signature of the decedent, there is but very slight evidence in contradiction of claimant's witnesses. The testimony of claimant's witnesses, including the testimony of the executor, but not including the opinion evidence as to decedent's signature, shows that decedent not only assumed and admitted that she had signed and delivered the note to the claimant, but that she recognized a legal obligation to compensate claimant for services rendered.

While mere gratuitous services are an insufficient consideration for an executory agreement or promise, the performance of services and furnishing of board and valuable things, not as a gratuity but in expectation of being compensated therefor, is sufficient to sustain a promissory note for an amount in excess of the real value of the services performed or things furnished.

In the absence of fraud an existing legal obligation will sustain a promise to pay an amount far in excess of its real value. (See *Matter of Gallagher*, 153 N. Y. 364; *Cowee* v. *Cornell*, 75 id. 98; *Earl* v. *Peck*, 64 id. 599; *Worth* v. *Case*, 42 id. 362; *Yarwood* v. *Trusts & Guarantee Co. (Ltd.)*, 94 App. Div. 47; *Bush* v. *Whitaker*, 45 Misc. Rep. 75.)

The testimony shows that decedent meant what she said in the note by the words "Value received." That statement under the circumstances described is a recognition of a valid legal obligation against her.

The appellants contend that the surrogate erred in allowing the claimant to answer questions as to his receiving certain letters by mail which it is claimed were in the handwriting of the decedent. Claimant desired to use the letters and the signatures thereto as standards of comparison. Those admitted in evidence were only

received for that purpose, and the handwriting of those actually used was shown and admitted by the executor to be that of the decedent. If there was any error in the ruling of the surrogate, in allowing the claimant to answer the questions asked of him relating to his having received the letters by mail it was entirely immaterial and harmless.

We have examined the other objections raised by the appellants but do not think that they are of sufficient importance to reverse the decree. The decrees should be affirmed, with costs.

Decrees unanimously affirmed, with costs.