MARY F. GA NUN, on Behalf of Herself and Other
  Creditors of JANE M. SANDS, Deceased, Appellant, v.
  MARY E. PALMER, Individually and as Executrix of
  JANE M. SANDS, Deceased, Respondent.

Contract — written agreement construed and held to be con-
tractual not testamentary — Court of Appeals concluded by
judgment of Appellate Division that findings of fraud were
contrary to evidence — transfer without consideration by debtor
raises presumption of fraud.

1. Plaintiff and defendant's testatrix entered into an agreement
in writing to the effect that plaintiff promised "to care for
(decedent) in sickness and health, so long as she lives," and decedent
promised to pay to plaintiff a certain sum each month, and at
decedent's death plaintiff was to have a sum "she will find in the
safe deposit" and other articles. In an action by plaintiff to set
aside as fraudulent a subsequent transfer of her property by
decedent it was contended that while the promise to pay the monthly
sum is contractual, the contract stops there, and what follows is
testamentary. Held, untenable; that the promise made by decedent
is expressed in a single sentence; its clauses are closely bound
together and the promise extends to all of them; that the writing
contains all the elements of a valid contract; that the plaintiff has
established her position as a creditor and is entitled to maintain the
action.

2. The Court of Appeals has no jurisdiction to review the action
of the Appellate Division in reversing upon the facts a judgment of
Special Term unless there was no question of fact on which the
reversal could be based. To make out such a question it is not nec-
essary that there be any conflict in the evidence; it is enough that
conflicting inferences may be drawn from uncontroverted evidence.
Hence, where the Appellate Division has reversed a judgment,
based on findings of fraud, as contrary to the weight of evidence,
this court is concluded by its judgment upon the facts.

3. A transfer without consideration by one who is then a debtor
raises a presumption of fraud and the creditor may stand upon that
presumption until it is repelled. It is not for him to show what
other property is retained. (Kain v. Larkin, 131 N. Y. 300, so
far as it holds to the contrary, held to have been overruled.) If
there was no consideration the fraudulent purpose, in the absence

of explanation, is an inference of law. The liability to this plaintiff was an indebtedness within the meaning of the rule. (*Smith* v. *Reid*, 134 N. Y. 568; *Kerker* v. *Levy*, 206 N. Y. 109, followed.)

*Ga Nun* v. *Palmer*, 159 App. Div. 86, modified.

(Argued December 16, 1915; decided January 11, 1916.)

APPEAL from a judgment, entered December 24, 1913, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alton B. Parker, Charles Thaddeus Terry, Edward Ward McMahon, Frederic S. Barnum* and *Henry H. Wells* for appellant. The dismissal of the complaint by the Appellate Division upon the sole ground, as stated in its order, that the instrument in suit, so far as regards the provision for the payment of $20,000, is testamentary in character, was error in law. The instrument, upon its face, and the evidence of the circumstances leading up to and attending its execution, and bearing upon the intentions of the parties thereto, all undisputed, establish clearly that it is contractual throughout. (*Van Cott* v. *Prentice*, 104 N. Y. 45; *Publishing Co.* v. *Steamship Co.*, 148 N. Y. 39; *Smith* v. *Smith*, 2 Johns. 235; *Brooks* v. *Hubbard*, 3 Conn. 58; *Gleason* v. *Pinney*, 5 Cow. 152; *Murphy* v. *Dernberg*, 84 App. Div. 101; *Hand* v. *Gas Engine Power Co.*, 167 N. Y. 142; *Swan* v. *Etgen*, 152 App. Div. 399; *Carnwright* v. *Gray*, 127 N. Y. 92; *Worth* v. *Case*, 42 N. Y. 362; *Hegeman* v. *Moon*, 131 N. Y. 462; *Putnam* v. *Lincoln Safe Deposit Co.*, 191 N. Y. 166; *Root* v. *Strang*, 77 Hun, 14.) The reversal by the appellate court of the findings of fact made by the trial court as against the weight of evidence was error because there are no facts or reasonable inferences to be drawn from

the facts in the record which would sustain contrary findings, and this court, therefore, can and should reverse the judgment and order appealed from and reinstate the judgment of the trial court. (*Greenwald* v. *Wales*, 174 N. Y. 140; *Billings* v. *Russell*, 101 N. Y. 226; *Baldwin* v. *Short*, 125 N. Y. 553; *Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166; *Otten* v. *Manhattan Ry. Co.*, 150 N. Y. 395; Cardozo Juris. of Ct. of Appeals, § 10; *Benedict* v. *Arnoux*, 154 N. Y. 724; *Davenport* v. *Palmer & Mayne*, 211 N. Y. 596.)

*George H. Taylor, Jr.*, and *George H. Hyde* for respondent. This court has no power to review the determination of reversal appealed from in so far as that determination is based upon the proposition that certain findings of fact specified were against the weight of the evidence. (*Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404; *Faber* v. *New York*, 213 N. Y. 411; *Middleton* v. *Whitridge*, 213 N. Y. 499; *Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166; Code Civ. Pro. § 1338; *Seeman* v. *Levine*, 205 N. Y. 514; *Stokes* v. *Continental Trust Co.*, 186 N. Y. 285; *Lenox* v. *Lenox*, 195 N. Y. 359; *Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Untermeyer* v. *City of Yonkers*, 188 N. Y. 594; *McKinley* v. *Hessen*, 202 N. Y. 24.) The contract, the breach of which is the basis of plaintiff's claim, provided only for the payment of $70 per month by the decedent to the plaintiff during the decedent's lifetime for the support of the house and her (plaintiff's) clothes; the provision as to the $20,000 which was to be found in a safe deposit vault in the city of New York at the death of the decedent is in the nature of a specific legacy and cannot be made the basis of a claim for damage; there was no promise by Jane M. Sands to pay $20,000 to Mrs. Ga Nun; the contract was in plaintiff's handwriting, and if doubtful in meaning must be construed favorably to defendant. (*Berry Harvester Co.* v *Wood Co.*, 152 N. Y. 540; *Crawford* v. *McCarthy*,

159 N. Y. 514; *Ga Nun* v. *Palmer*, 202 N. Y. 483; Jarman on Wills, 11; *Langdon* v. *Astor*, 16 N. Y. 9; *Hubbard* v. *Hubbard*, 12 Barb. 148; *Robinson* v. *Brewster*, 140 Ill. 649; *Olney* v. *Howe*, 89 Ill. 556; *Cover* v. *Stern*, 67 Md. 449; *Coulter* v. *Shelmadine*, 204 Penn. St. 51; *Dauel* v. *Arnold*, 201 Ill. 570; *Roquet* v. *Eldridge*, 118 Ind. 147; *Holt* v. *Libby*, 80 Me. 329.) The dismissal by the Appellate Division was warranted as a matter of law because the plaintiff failed to show any fraud on the part of Mary E. Palmer in any of the transactions as to which evidence was adduced. (*Kalish* v. *Higgins*, 70 App. Div. 192; 175 N. Y. 495; *Multz* v. *Price*, 82 App. Div. 339; *Fitzpatrick* v. *Fox*, 80 App. Div. 345; *Matter of Case*, 214 N. Y. 199.)

CARDOZO, J. The plaintiff asserts that she is a creditor of Jane M. Sands, deceased, and that transfers in fraud of her rights as a creditor were made by the debtor during life. Disaffirming the fraudulent transfers, she brings this action to set them aside (Personal Property Law [Cons. Laws, ch. 41], § 19; Real Property Law [Cons. Laws, ch. 50], § 268). Her position as a creditor is disputed; the intent to defraud her is denied. A judgment in her favor has been reversed by the Appellate Division, and her complaint dismissed.

In November, 1899, Jane M. Sands was over seventy years of age. She was unmarried and lived alone. She wished a companion to watch over her and tend her; and she found the desired companion in her cousin, the plaintiff. At that time the plaintiff was a dressmaker in Brewster, N. Y., with an established business. She gave up her business and went to live with Miss Sands in Brooklyn. They made an agreement which was put in writing, and it reads as follows:

"*Nov.* 23, 1899.

" I, Mary F. Ga Nun, do promise to care for Jane M. Sands, in sickness and health, so long as she lives.

1916.]              Opinion, per Cardozo, J.              [216 N. Y.]

" I, Jane M. Sands, do promise to pay Mary F. Ga Nun $70 a month for the support of the house and her clothes so long as I live, and at my death she is to have $20,000 that she will find in the Safe Deposit in New York, and she is to take my keys and distribute the packages in the box as they are marked, and all my clothing and wearing apparel and silver, (in short) everything in the house shall be Mary F. Ga Nun's.

"(Signed)   JANE M. SANDS.

" Louis W. Jansen
" A. S. Leonard, M. D.
" W. G. Bourne,
          "*Witnesses*."

The two women lived together until May, 1900. Miss Sands then refused to live with the plaintiff longer, transferred her home to Poughkeepsie, and lived until her death in August, 1906, with a friend, Mary E. Palmer, who is the defendant here. On her death, neither $20,000, nor any other sum, was found in the safe deposit box in New York. She had given up the box when she abandoned the plaintiff. Her will gave Mrs. Palmer everything. " In case I leave any property undisposed of at the time of my decease, I give and devise same to Mary E. Palmer, and appoint her executor." The language of this gift suggests a purpose to dispose of the estate during life, and that purpose must have been fulfilled, for all that was left of the estate when Miss Sands died was a small quantity of jewelry of little or no value. Everything else had been transferred, and much, if not all, had come into the hands of Mrs. Palmer. There is testimony, and it is not contradicted, that at the time of the break with the plaintiff, a lawyer advised Miss Sands, in the presence of Mrs. Palmer, that a contract, unlike a will, could not be revoked, that property forming part of the estate at death must be applied in payment of debts, and that the only way to avoid that result was to give the property away during life. The plaintiff insists

that the transfers to Mrs. Palmer were made as the product of that advice. She insists that they were made without consideration, and with fraudulent intent. In support of that charge, she has given testimony which satisfied the trial judge. He held Mrs. Palmer accountable for seventy-five shares of Union Pacific stock; for $15,000 of Union Pacific bonds, the proceeds of which were invested in part in real estate in Mount Vernon; and for thirty shares of stock of the Greenwich Trust Company. Mrs. Palmer's position is that some of this property never reached her hands, and that for whatever did come to her she gave value. She concedes that she received seventy-five shares of Union Pacific stock. She claims, however, that in return for this stock, she undertook by an agreement not unlike the plaintiff's to provide a home for her friend. In support of that claim, she relies upon some testimony of her husband. She also concedes, though at one time she denied under oath, that she received thirty shares of Greenwich Trust Company stock, but she relies upon the recital "for value received" in the assignment as some evidence that she paid for it (*Strickland* v. *Henry*, 175 N. Y. 372). She has not taken the stand herself; and if some elements of the transactions are obscure, we have no explanation from her lips to relieve the obscurity. The Appellate Division held, however, that the findings of fraud were against the weight of evidence. It held also that the writing signed by Miss Sands was not a contract for the payment of $20,000, but was in the nature of a specific legacy; and because there was no contract, that the action could not be maintained and that the complaint should be dismissed.

Whether there was a contract is the first question to be determined. The promise to pay the plaintiff seventy dollars a month is conceded to be contractual. The defendant's argument is that the contract stops there, and that what follows is testamentary. That argument was accepted by the Appellate Division. The holding

was "that the contractual part of the instrument under consideration was limited to an obligation upon the part of plaintiff to care for Miss Sands 'in sickness and health' as long as she lived, and to an obligation upon the part of the latter to pay her $70 a month therefor, and that the remaining provisions of said instrument are testamentary in character." In that holding, we are unable to concur. The promise that Miss Sands made is expressed in a single sentence. Its clauses are closely bound together. The promise extends to all of them. By the decision of the Appellate Division this single sentence, with its clauses united by the conjunction "and," has been split up into two elements. The first clause, it is said, is part of a contract; the second, part of an informal will. The first, it is said, gives rise to an irrevocable obligation; the second is the expression of a transitory purpose, which may be canceled over night. We find no warrant for this dismemberment of the contract. On the one side we have the plaintiff's promise to care for Miss Sands during life; on the other we have the promise of the reward for the service. There is nothing to show that one part of this reward was to be irrevocable, and that another was to be revocable. Each promise in its entirety is the consideration for the other. It makes no difference in such circumstances that part of the reward is payable after death. The character of the promise is not changed by the time fixed for its performance (*Hegeman* v. *Moon*, 131 N. Y. 462; *Carnwright* v. *Gray*, 127 N. Y. 92; *Robb* v. *Washington & Jefferson College*, 185 N. Y. 485). It makes no difference that the reward may seem to be extravagant in amount. Unless there is fraud or undue influence, the inadequacy of the consideration does not destroy the obligation of the contract (*Earl* v. *Peck*, 64 N. Y. 596; *Matter of Bradbury*, 105 App. Div. 250, 255). It makes no difference that the contract is for the payment of a specific fund, to be found in a specific place. If the promisor has made away with

39

the fund, she must answer for the breach by the payment of an equal sum as damages (*N. Y. News Publishing Co.* v. *Nat. Steamship Co.*, 148 N. Y. 39; *Simon* v. *Etgen*, 213 N. Y. 589). The canon of construction which prefers the meaning that will sustain rather than one that will defeat an instrument, reinforces these conclusions. Treat the promise as testamentary, and it is not effective for any purpose; there is no suggestion that the writing was executed with the formalities requisite for wills. Treat it as contractual, and it is precisely adapted to the attainment of the end in view. In fine we discover in this writing all the elements of a valid contract, and we are not at liberty, for the purpose of destroying its validity, to construe it as anything else. We think that this court looked upon the promise as contractual when the case was here on an earlier appeal (202 N. Y. 483). But there are statements in that opinion which may have left the question open, and we have considered it anew.

We hold, therefore, that the plaintiff has established her position as a creditor, and is entitled to maintain this action. We have yet to determine whether she has shown that the transfers to Mrs. Palmer were made or accepted with fraudulent intent. The Appellate Division reversed the findings of fraud as contrary to the weight of evidence. The dismissal of the complaint, however, was not put upon that ground. The order states that the complaint is dismissed because the promise is testamentary and unenforcible. The implication is that if the failure to prove fraud by a preponderance of evidence had been the only objection to the judgment, the Appellate Division would not have dismissed the complaint, but would have granted a new trial (*Bonnette* v. *Molloy*, 209 N. Y. 167). But the plaintiff asks us to hold that the Appellate Division was not even justified in granting a new trial. She insists that fraud was conclusively established, and that the judgment of the trial court ought, therefore, to have been affirmed.

This court has no jurisdiction to review the action of the Appellate Division in reversing upon the facts a judgment of the Special Term unless there was no question of fact on which the reversal could be based (*Hirshfeld* v. *Fitzgerald*, 157 N. Y. 166; *Matter of Totten*, 179 N. Y. 112, 122). To make out such a question it is not necessary that there be any conflict in the evidence; it is enough that conflicting inferences may be drawn from uncontroverted evidence (*Hirsch* v. *Jones*, 191 N. Y. 195; *Tousey* v. *Hastings*, 194 N. Y. 79). We think that when that test is applied, questions of fact must be held to have been involved in the decision of this case, and hence that we are concluded by the judgment of the Appellate Division that the weight of evidence is in conflict with the decision. However persuasive the evidence of fraud may seem to us, we are unable to say that conflicting inferences may not be drawn from it. But the opinion of the Appellate Division suggests, we think, a misconception of the law, which may have controlled its judgment upon the facts, and which ought, therefore, to be pointed out for the guidance of the trial court. The disapproval of the findings of fraud is placed in that opinion upon two grounds. It is said in the first place that there is some evidence that the transfers to Mrs. Palmer were not entirely without consideration. This is said somewhat doubtfully, and in evident recognition of the adverse inferences to be drawn from her failure to take the stand and explain the dubious transactions. But the opinion goes on to state, and with greater assurance, that even though the transfers were voluntary, the burden was on the plaintiff to show that at the time when they were made they left the grantor insolvent. It is here that the learned Appellate Division, in our judgment, has misconceived the law. The rule is that a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled. It is not for him to show what other property

was retained (*Kerker* v. *Levy*, 206 N. Y. 109; *Smith* v. *Reid*, 134 N. Y. 568; *Cole* v. *Tyler*, 65 N. Y. 73, 78). *Kain* v. *Larkin* (131 N. Y. 300), to, the extent that it held to the contrary, has now been overruled (*Kerker* v. *Levy*, *supra*; *Sanitary F. & C. Co.* v. *Scheidecker*, 165 App. Div. 294, 296). The transfers may, of course, have been fraudulent even though there was a consideration (*Baldwin* v. *Short*, 125 N. Y. 553; *Galle* v. *Tode*, 148 N. Y. 270, 279; *Greenwald* v. *Wales*, 174 N. Y. 140). Their validity turns then upon the intent with which they were given or received. If, however, there was no consideration, the fraudulent purpose, in the absence of explanation, is an inference of law (*Coleman* v. *Burr*, 93 N. Y. 17; *Smith* v. *Reid*, *supra*; *Cole* v. *Tyler*, *supra*). The liability to the plaintiff was an indebtedness within the meaning of that rule (*Pulsifer* v. *Waterman*, 73 Me. 233, 238; *Post* v. *Stiger*, 29 N. J. Eq. 554, 558; *Welch* v. *Morris*, 193 Mo. 304, 323). Whether the Appellate Division, if it had correctly estimated the effect of transfers without consideration, would still have held that fraud had not been proved, would have held that some of the contested transfers were not made, and that the others were made for value and without guile, we may doubt, but cannot know. On a new trial it will be the duty of the trial judge, exercising an independent judgment, to draw his own inferences and reach his own conclusion (*Gugel* v. *Hiscox*, 216 N. Y. 145, 152).

The judgment, so far as it dismisses the complaint, should be reversed and a new trial granted, with costs in the Appellate Division and in this court to abide the event.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK, HOGAN and POUND, JJ., concur.

Judgment accordingly.