**SCHWARTZ v. COEN et al.**

No. 2394.

District Court, E. D. New York.

May 4, 1942.

Nathan B. Fogelson, of New York City, for plaintiff.

Peter Rosenberg, of New York City, for defendants.

BYERS, District Judge.

In this action a trustee in bankruptcy seeks: (a) to set aside as fraudulent the assignment by the first named defendant, the bankrupt, of a life insurance policy to his wife on November 20, 1929; (b) to procure a decree that the premiums paid pursuant thereto between November 20, 1929, and January 10, 1940, the date of filing the petition, shall inure to the benefit of the only creditor filing a claim; and (c) that $1,532.21 applied by the bankrupt's wife, the co-defendant, some months after the petition was filed, toward the purchase of their residence, be recovered by the plaintiff.

An additional demand for relief, pleaded as a third cause of action, was abandoned, and not made the subject of proof.

The plaintiff's principal evidence consisted in the testimony of the defendants, a representative of the company issuing the insurance policy, an attorney for Morris Plan Bank, and one of the employees of the latter; the defense called no additional witnesses, and the facts therefore cannot be said to be in dispute. As to the inferences to be drawn from them, there is room for difference of opinion.

The manifest object of the petition was to obtain discharge from a judgment recovered by the Morris Plan on or about November 19, 1930, in the sum of $1,270.38, upon a note given by one Suchonik as borrower, and five co-makers of whom the bankrupt was one. Seemingly the amount claimed to be due thereon when the petition was filed was $1,969.09. An earlier judgment, recovered by the same lender on the Worksman loan, an entirely separate transaction, was also scheduled, as to which the claimed balance was $183.82.

These were the only debts set forth in the petition (although another was added by amendment) and no others were proved, so that the Morris Plan is the real party in interest for whom the trustee is acting.

The evidence is deemed to establish that:

1. Arthur C. Coen (also known as Cohen) filed a voluntary petition in bankruptcy in this court on January 10, 1940, and schedules listing only two debts, both owing to Morris Plan on judgments recovered against him as co-maker of notes; one given by Worksman, as to which the balance alleged to be due was $183.82, and the other by Suchonik, as to which the balance alleged to be due was $1,969.09, making $2,152.91 in all. The assets shown were $1.72.

2. Thereafter the plaintiff was duly appointed, and qualified as trustee.

3. On November 20, 1929, the bankrupt assigned to his wife, Rose, ordinary life insurance policy for $12,500.00, No. 2,944,-960B, issued by the Mutual Life Insurance Company under date of January 28, 1928, in which she was named as beneficiary; this was one of two equal policies which replaced an earlier one dated December 8, 1921, for $25,000.00 which was a 20-payment life policy, in which the same beneficiary was named, with right to change, and as to which policy the premiums had been paid in full.

The cash surrender value of the policy so assigned was $2,989.63 on January 8, 1940.

4. The other $12,500.00 policy was also assigned on the same date and to the same person, but is not involved in this

controversy. There was no change in the beneficiary named in either policy.

5. The cash surrender value of the policy No. 2,944,960B, as to which plaintiff seeks relief, was $1,015.38 on November 29, 1929.

6. As early as 1925 the premiums upon the $25,000.00 policy were paid by the defendant Rose Coen by check drawn upon her individual bank account, and this practice continued after that policy was split, and prevailed through all the years involved in this litigation.

7. Arthur Coen, the bankrupt, turned over his weekly earnings to his wife, who had no other resources, beginning not later than 1921, which she deposited in a bank account in her own name, and against which she alone had authority to draw checks; she paid therefrom all family bills and expenses including her husband's life insurance premiums; any excess over the amounts so required, she carried in savings accounts in her own name and as her individual property. Such was the method employed by this husband and wife with respect to financial matters, and it was not entered into fortuitously, or maintained for the purpose of defrauding creditors.

8. On June 10, 1925, Rose Coen loaned $2,500.00 to Arglomaco, Inc., at her husband's request, by check drawn upon her personal bank account on Hobart Trust Company, Passaic, N. J., where they resided. Her husband and his brother were equal owners of all the stock of that corporation, which went into bankruptcy in December, 1926.

In substance, it was a loan to him, but not in form.

9. In 1928 and part of 1929, Arthur C. Coen conducted an individual business as New Art Studios, which came to an end through fire, and all creditors were paid in full from proceeds of insurance.

10. Following that, and from about August or September, 1929, the bankrupt was employed on a salary basis, and has so continued until the present.

11. On October 25, 1926, one Morris Worksman borrowed $2,040.00 from Morris Plan, executing a note as borrower. Three co-makers also signed, of whom the bankrupt was one. He received no part of the loan, nor was he related to Worksman in any business or family sense. On November 28, 1927, judgment was entered against the bankrupt for $878.20 on said note, and he made payments on account thereof, so that on November 20, 1929, there remained unpaid by him a sum of not to exceed $368.70.

For failure of proof by plaintiff, it is impossible to state the amount with greater precision.

12. This is the only item of indebtedness proven to have existed on the part of the bankrupt on November 20, 1929. During 1927 and 1928 the bankrupt made not less than eighteen payments on account of this judgment. During 1937 garnishee proceedings against him were had and resulted in the collection of an additional $209.20.

13. On April 10, 1929, one Suchonik borrowed $1,440.00 from Morris Plan, executing a note as borrower. Five co-makers also signed, of whom the bankrupt was one. He received no part of the loan, nor was he related to Suchonik in any business or family sense. On November 19, 1930, judgment by default was entered against the bankrupt for $1,270.38 on said note.

14. On or before November 20, 1929, the bankrupt had no notice that he would be called upon to pay the Suchonik loan.

15. By reason of his indebtedness on the Worksman judgment and his acknowledged lack of assets on November 20, 1929, it must be inferred that Arthur C. Coen was then insolvent, in the bankruptcy sense, although no precise margin of excess of liabilities over assets appears in the testimony.

16. The assignment of the policy in question on November 20, 1929, transferred the cash surrender value of $1,015.38 from the bankrupt to his wife.

17. The effective date of the then Section 55-a of the Insurance Law of New York was March 31, 1927. That was superseded by Section 166, effective January 1, 1940.

18. The payments of premiums upon the policy in question by Rose Coen, the beneficiary, from and after November 20, 1929, to and including January 10, 1940, were not made by reason of said assignment, but in pursuance of a custom which began not later than 1925, when the original policy, of which the one in controversy was one-half, was in effect; such payments were not made with intent to hinder, delay or defraud creditors.

19. The plaintiff has failed to prove that during the year prior to January 10, 1940, the bankrupt paid any sums to his wife for the purpose of defrauding creditors, or to put his income and earnings in excess of the living requirements of his wife and himself, beyond the reach of creditors.

### Conclusions.

I. The plaintiff is entitled to a decree setting aside the assignment of the life insurance policy in question to the extent that there was money owing on January 10, 1940, from Arthur C. Coen to Morris Plan Bank on the judgment recovered by it against him on the Worksman note on November 28, 1927.

II. In all other respects, the defendants should have judgment.

■ The foregoing invite but little discussion. The indebtedness comprehended in the judgment recovered on the Worksman note arose prior to March 31, 1927, the effective date of Section 55-a (now Section 166) of the Insurance Law of New York. In re Messinger, 2 Cir., 29 F.2d 158, 68 A.L.R. 1205; In re Jeroloman, D.C., 6 F.Supp. 430; Cecilian Operating Corp., v. Berkwit, 151 Misc. 814, 272 N.Y.S. 291. That statute therefore cannot be invoked to defeat the remedy of the creditor thereunder. The assignment made on November 20, 1929, is invalid pro tanto, since it was without consideration, unless the loan made by Mrs. Coen directly to Arglomaco, Inc., referred to in paragraph 8 above can be interpreted to the contrary.

■ It is assumed that the loan was made from her individual funds which had been supplied by her husband, and that she made it at his request; but she did not make it to him, and filed a proof of claim in the bankruptcy proceedings of the company, in the sum of $2,200.00.

She did not assert that this was for other than an unpaid balance due on that loan. Nor can it be said that the sums which she continued to receive from her husband's weekly payments to her were not sufficiently in excess of household and family requirements to reimburse her ultimately for that outlay. Had the assignment been intended, at the time of its execution, to be based upon that past consideration, it would have been a simple matter to have inserted an appropriate reference thereto in the assignment blank.

Mrs. Coen's testimony on the subject before the Referee has not been overlooked, but is not sufficiently corroborated by contemporaneous data to justify a finding in accordance therewith.

The assignment is deemed to be ineffective as to the Worksman claim, because of Arthur Coen's insolvency at the time it was made. Apparently Ga Nun v. Palmer, 216 N.Y. 603, 111 N.E. 223, compels the court to infer that there was a fraudulent purpose, since there was no consideration, and it cannot be said that the evidence contains an explanation to the contrary.

Mrs. Coen was the named beneficiary and no additional status seems to have been created in her favor by the assignment, save to vest in her the then cash surrender value of the policy. No testimony was adduced from either her husband or herself to indicate why that was a desirable thing, or why it accomplished any purpose then deemed important.

At the same time, the bankrupt's testimony, that the balance probably owing by him on the Worksman judgment was not in his mind at the time, is credible. He was preoccupied with the fire that had destroyed his own business, and with collecting the insurance and distributing it to the creditors of that enterprise, and in getting a new job. It must be remembered that the Worksman obligation was a secondary one from which he received no benefit, and when he says that he did not give thought at that time to one who was primarily a creditor of Worksman, no pulsating skepticism is thereby begotten.

■ As to the second cause of action, concerning the payment of premiums of $355.00 per year on the policy by Mrs. Coen after the assignment, the evidence is not persuasive that they were made in conscious or other fraud of creditors; she had attended to these and other family bills by checks drawn upon her personal account, for nearly twenty years prior to 1929; nor was the amount of premium out of proportion to the bankrupt's earnings.

The Suchonik liability did not arise prior to March 31, 1927, and the plaintiff has sustained no cause of action for an award to him of the increase in cash surrender value of the policy between November 20, 1929, and the date of bankruptcy. As has been said, during those years Coen merely continued his practise of turning over his

884

weekly salary to his wife, which has been shown to have been in effect since 1925 and probably much earlier.

The purchase of the property referred to in the fourth cause of action was not a transaction tainted by fraud or bad faith. The Morris Plan could have pursued its remedies under a garnishee order under the Suchonik judgment as it did under the Worksman judgment in 1937-38; that would have depleted the bankrupt's weekly payments to his wife, but it does not follow that what he did turn over to her in accord with the practise of his entire married life must be deemed to have been transferred by him in fraud of this creditor, from and after the date of the latter judgment. The evidence is strangely silent as to efforts made to collect that judgment or to bring it home in the practical sense, to the bankrupt. True he was chargeable with knowledge of it, but to support an assertion that he defrauded that creditor by turning over his weekly earnings to his wife during the year prior to filing his petition in bankruptcy and while insolvent, "for the purpose of defrauding the creditors of the defendant bankrupt and to place his income and earnings beyond their reach" requires affirmative proof which is not present in this record.

Settle decree in accordance with the foregoing, without costs.