HUMPHREY v. CAMPBELL.

1. EXCEPTION too general.
2. WILLS—LIMITATION OF ESTATES—POWERS.—A life estate, with power to "distribute" by will, does not vest in life tenant such estate as, after such "distribution," is subject to the payment of her debts, and instructions to executor to pay *certain debts* has not the effect of "distribution" by will. *Mr. Justice Gary dissents as to last proposition.*
3. *Williman* v. *Holmes,* 4 Rich. Eq., 475; *Scott* v. *Bush,* 9 Rich. Eq., 358; *Pulliam* v. *Byrd,* 2 Strob. Eq., 134, *distinguished from this.*

Before TOWNSEND, J., Charleston, September, 1899. Affirmed.

Action by William F. Humphrey, trustee, against Mary Bennett Campbell, Cecil Campbell Higgins, in his own right and as executor and trustee under the will of Mary Butler Campbell, Susan Rush Higgins, William Austin and The Home for the Mothers, Widows and Daughters of Confederate Soldiers of Charleston, S. C. From Circuit decree, confirming report of master, the latter named defendant appeals.

*Messrs. FitzSimons & Moffett,* for appellant. Mr. Moffett, cites: *As to the construction of the deed:* 112 U. S., 352; 166 U. S., 546; 126 Mass., 200; 15 N. H., 298; 129 Mass., 455; 154 Mass., 318; 171 Mass., 311; 7 Ves., 499; 4 Rich. Eq., 51; 52 S. C., 90.

*Messrs. Smythe, Lee & Frost,* contra, for plaintiff and other defendants, cite: *As to respondent's construction of trust deed:* 4 Rich. Eq., 476; 9 Rich. Eq., 358; 2 Strob. Eq., 134; 14 S. C., 528; 29 Fed. Cases, 162; 12 Penn. St., 277.

September 21, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. We think the report of W. Gibbes Whaley, Esq., as one of the masters of Charleston County, S. C., renders it unnecessary to refer at length to the pleadings and the exhibits. This report is as follows: "Various reports have hitherto been filed in the above entitled case, but as the examination of the same would take up much time, I think it will be well to save the time of the Court, and briefly rehearse the facts of this case before giving my conclusions on the matters of fact and law involved. I, therefore, report:

"*As to matters of fact:*

"1. That on the 2d day of March, 1888, the plaintiff, William F. Humphrey, was by deed of indenture between George Bliss, of New York, party of the first part, and William F. Humphrey, of Boston, party of the second part, duly appointed trustee for Mary Butler Campbell and Mary Bennett Campbell.

"2. That the trust estate consisted of certificate No. 81 for thirty-nine shares or parts in the Coosaw Mining Company.

"3. That the trusts upon which the said trust estate was held were as follows: '1st. That the said party of the second part (William F. Humphrey) shall receive and collect the income, profits and dividends as often and whenever the same shall be payable, and after deducting all incidental expenses, shall pay over the same as follows: To Mary Butler Campbell, the income from nineteen of said shares or parts, and to Mary Bennett Campbell, the income arising from twenty shares or parts, during their several lives. 2d. That the said Mary Butler Campbell and Mary Bennett Campbell shall each have full right and legal power to distribute her share of the trust estate by will, and if either leaves no will, the provisions of the will of the other shall govern the distribution or disposition of the whole of the said trust estate.'

"4. That on the 15th day of August, 1891, Miss Mary Butler Campbell departed this life, leaving of full force and effect her last will and testament, in which said will the said Miss Mary Butler Campbell provided as follows: 'First. I direct the payment of all my just debts and liabilities, particularly the indebtedness now due the Confederate Home of Charleston, S. C., of $1,690, held by me in trust for its benefit, and also the sum of $800 due Harriet Poyas Walker, of Charleston, S. C.   Second. I give and bequeath to my executor, hereinafter named, ten shares of the Coosaw Mining Company of South Carolina, to be held by him in trust, the income to be derived therefrom to be paid by him from time to time as the same is received to my niece, Helen L. Campbell, of Massachusetts, and at her death to my nephew, Benjamin F. Campbell, if he survives her.   Third. I give and bequeath to my executor, hereinafter named, six shares of the Coosaw Mining Company of South Carolina, to be held by him in trust, the income to be derived therefrom to be paid by him from time to time as the same is received to Maria S. and Margaret S. Higgins.   Upon the death of either, I direct my executor to pay the income of three of said shares to the survivor, and on the death or marriage of the survivor, the trust herein created shall cease and determine.   Fourth. I give and bequeath to Susan Rush Higgins, the wife of my nephew, Cecil Campbell Higgins, three shares of the Coosaw Mining Company of South Carolina, for her benefit and for the benefit of her children, my grandnephew, Campbell Higgins, and my grand-niece, Cecil Campbell Higgins, to be used and disposed of as the said Susan Rush Higgins may in her judgment think most advisable.   And I further give and bequeath to the said Susan Rush Higgins, the remaining shares of the Coosaw Mining Company of South Carolina, the income of which I have hereinbefore directed to be paid over to Helen L. Campbell or Maria S. Higgins and Margaret S. Higgins, subject, however, to the payment of the income derived from the shares left in trust for my executor for the benefit of said

Helen L. Campbell, Benjamin F. Campbell (if he survives
Helen L. Campbell), Maria S. Higgins and Margaret S.
Higgins, as hereinbefore designated.    I give and bequeath
all said shares to Susan Rush Higgins, to be used and dis-
posed of by her for her own use and benefit and that of her
said children, as she in her judgment may think most advisa-
ble.'   Which bequests, briefly stated, are that she gives the
stock to her executor to be held in trust by him, and the in-
come to be paid over to certain parties during certain lives,
and then under the fourth clause all of the said shares of
Coosaw stock given to Susan Rush Higgins to be hers abso-
lutely.

"5.  That on the 23d day of July, 1894, the said the Con-
federate Home of Charleston, S. C., a party defendant in
this suit, obtained a judgment in the Court of Common
Pleas of Charleston County for the sum of $1,936.66 against
Cecil Campbell Higgins, executor, duly appointed and quali-
fied under the will of Miss Mary Butler Campbell, the said
judgment being a judgment against the estate of Miss Mary
Butler Campbell.

"6.  That the Coosaw Mining Company, which has been a
joint stock company, subsequently became incorporated
under the laws of the State of South Carolina, and that
under a reorganization and new arrangements made, the
said Coosaw Company, acting under a decree of this Court,
filed herein on the 2d day of July, 1898, issued to Frank E.
Taylor, as substituted trustee for Mary Bennett Campbell, a
certificate of stock for 104 shares of the stock of the said
Coosaw Company, and at the same time issued to W. Gibbes
Whaley, Esq., the master herein, a certificate of stock for
99 shares of the stock of the said Coosaw Company, which
said last mentioned stock, together with the dividends which
had accrued upon the same, were to be held by the said mas-
ter to abide the final decree in this case, and subject to the
litigation between the executor of Miss Mary Butler Camp-
bell and the Confederate Home.

"7.  That there is now in the hands of the master herein,

the said certificates of stock for 99 shares of the Coosaw Company, and the amount of $537.50 in cash.

"*As to matters of law:*

"Argument has been made both by Mr. Moffett, representing the Confederate Home, and by Mr. A. M. Lee, representing the plaintiff and all other defendants other than the Confederate Home. On the part of the Confederate Home, it is claimed that upon the death of Miss Mary Butler Campbell, leaving in effect the will referred to herein, that then the stock of the Coosaw Company, she having executed the power of appointment provided for in the trust deed, became a part of her estate and subject to her debts, and that the stock and cash now in the hands of the master are liable to be levied upon under the judgment obtained by the said the Confederate Home. In support of this position, the attorney for the Confederate Home submits the cases of *Keith* v. *Bishop,* 4 Rich. Eq., p. 46; *Heath* v. *Gregg,* 52 S. C., page 88.

"On behalf of the plaintiff, and the other defendants, it is claimed that the estate of Miss Mary Butler Campbell in the Coosaw Company stock was an estate for life, with power of appointment by will, and that, being such, Miss Campbell took nothing but a life estate with the power to appoint; and that upon failure to make such appointment, the stock would have gone to such parties as Miss Mary Bennett Campbell might appoint by will, but that having exercised the power of appointment, the estate must go to the appointees. See *William* v. *Holmes,* 4 Rich. Eq., p. 476; *Scott* v. *Burt,* 9 Rich. Eq., p. 358; *Pulliam* v. *Byrd,* 2 Strob. Eq., p. 134; *Bilderback* v. *Boyce,* 14 S. C., p. 528. On behalf of the plaintiff, the question is also raised as to whether a judgment creditor could hold this specific property subject to a judgment, without first levying upon any other property which may be in this State, or upon certain real estate which it is admitted Miss Campbell owned in another State.

"I have disregarded the last question or questions, as

under my view of the case it is a matter of no importance at present.

"I hold: 1. That Miss Mary Butler Campbell had, in the Coosaw stock and cash now in my hands, an estate for life, with the power of appointment by will. 2. That Miss Campbell having exercised the power of appointment by will, the property must go to such persons as she has appointed, and that the same is not liable for her debts.

"I recommend that the master herein be authorized and directed to turn over to the executor of Miss Mary Butler Campbell the shares of stock now held by him, and also the cash now in his hands, after deducting from the latter the costs and expenses of these proceedings.

"I attach hereto my notes of a reference held on the 5th day of October, 1898, which notes state such facts as are admitted by all parties."

When, upon exceptions to the master's report, the cause came on to be heard before Judge Townsend, he overruled them and confirmed the report. From the decree of Judge Townsend, the defendant, the Home for the Mothers, Widows and Daughters of Confederate Soldiers of Charleston, S. C., have appealed to this Court on the following grounds: "1. His Honor, the Circuit Judge, erred in overruling the exceptions of defendant and in confirming the master's report. 2. His Honor erred in holding that Miss Mary Butler Campbell had, in the Coosaw stock and cash now in the master's hands, only an estate for life, with the power of . appointment by will; whereas, his Honor should have held that Miss Mary Butler Campbell had an interest under the trust deed *inter* George Bliss and William F. Humphrey, dated 2d March, 1888, in the Coosaw stock, and power of disposition thereof *inter vivos,* or by instrument in the nature of a last will and testament. 3. His Honor erred in holding that Miss Campbell 'having exercised the power of appointment by will, the property vested in her appointees free from her debts;' whereas, his Honor should have held that having exercised the power of appointment secured to

her by said trust deed, the said Coosaw stock and cash in the hands of the master, became a part of the estate of the said Mary Butler Campbell as assets and liable for her debts."

The first ground of appeal under the well settled rules of this Court need not be considered—it is too general, and then, too, it refers to a paper alleged to contain exceptions to the master's report, but without stating any grounds setting out the objections of the appellant. It is overruled.

We will examine the second and third grounds of appeal together. The original deed of trust clearly provides that the trustee, Mr. Humphrey, shall hold the legal title to the shares of the Coosaw Mining Company, and, after paying expenses, turn over the dividends of such shares to Miss Mary Butler Campbell, during her natural life. This is nothing but a life estate. Further, a power of appointment *by will* is provided under the deed of trust to said shares by Miss Mary Butler Campbell, whereby it is apparent that said Miss Mary Butler Campbell can exercise such power of appointment by will alone. Such being the case, it is manifest that Miss Campbell or her estate itself can derive no control of such trust estate, for the simple reason that her exercise of appointment is by will alone, which operates only after her death, and the appointees under her will are not such as the law of descent would provide. Suppose proceedings had been commenced in Miss Campbell's lifetime to compel the execution of a will by her to her executor to pay her debts. Would not the Court have dismissed such a complaint the moment it was presented? Then, if her power of appointment could not have coerced while in life, with how much more reason is it manifest that such power of appointment could not be controlled by a Court after her death? It seems to us that the Circuit Judge was correct in his conclusions.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE JONES *concurs in the result.*

MR. CHIEF JUSTICE MCIVER, *concurring.* I concur in
the result. I must confess, however, that, at first, I was
very much inclined to apply what is called the well settled
English rule to this case, to wit: "Where a person has a gen-
eral power of appointment, either by deed or by will, and
executes this power, the property appointed is deemed, in
equity, as part of his assets and subject to the demands of his
creditors in preference to the claims of his voluntary ap-
pointees or legatees" (see 3 Pom. Eq. Jur., sec. 1106,
note 2; 18 Am. & Eng. Ency. of Law, 986; *Brandies* v.
*Cochran,* 112 U. S., at page 352; *Manson* v. *Duncanson,* 166
U. S., at page 546) ; because it seems to me contrary to pub-
lic policy to allow a person to take all the benefits of property,
with the right to dispose of it, at his death, as he pleases,
without the same being subject to the payment of his debts.
As is said by Dargan, Ch., in *Heath* v. *Bishop,* 4 Rich. Eq., at
page 50: "There are certain ideas that are inseparable from
the institution of property, among the most prominent of
which are the right of alienation, and its being subject to
the payment of debts. In all cases like the present, the in-
quiry must be whether the debtor has a vested, determinate
interest in the equitable estate sought to be subjected, with
the present right of enjoyment in severalty. If he has, the
right of the creditor follows, as a corollary in mathematical
science does the main proposition." Here Miss Mary Butler
Campbell unquestionably has the absolute right to the income
of the property in question, during her life, which she could
have disposed of as she pleased, with the further right to
dispose of the property, at her death, by giving it to whom-
soever she pleased. Having thus the right to the absolute
enjoyment of the property during her life, with the right to
dispose of it at her death, as she pleased, it seemed to me that
the property should, in equity, be subject to the payment of
her debts, just as if it were absolutely her own. For, as is
said by Dargan, Ch., in the case above quoted from, at page

55, quoting, with approval, from *Hallett* v. *Thompson,* 5 Paige, 583 : "It is contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able, at the same time, to keep it from his honest creditors." Of course, I am not to be understood as even intimating that Miss Mary Butler Campbell was animated by any such improper motive. On the contrary, I have no doubt she supposed that, by the first clause of her will, providing for the payment of her debts, particularly the debt due by her to the Confederate Home, that she had made ample provision for the payment of her debts.

The cases cited from other States by the counsel for appellant—notably the case of *Clapp* v. *Ingraham,* 126 Mass., 200; *Commonwealth* v. *Duffield,* 12 Penn. St., 277, and *Johnson* v. *Cushing,* 15 N. H., 298, seem to recognize and follow the English rule. On the other hand, the cases from our own State, which have been cited to sustain the Circuit decree, are not in point. In *Williman* v. *Holmes,* 4 Rich. Eq., 475, the power of appointment was not *general,* but was limited to the children and grand-children of the testator. The donee of the power could not exercise it in favor of any person whom she might select, but her field of choice was limited to the children and grand-children of the testator; and for that reason the English rule could not have been applied. In *Scott* v. *Burt,* 9 Rich. Eq., 358, and in *Pulliam* v. *Byrd,* 2 Strob. Eq., 134, the power of appointment was not exercised, and all the cases, recognizing the English rule, hold that the rule cannot be applied unless the power is exercised. There are, however, at least three cases in this State, which, as I understand them, do fully sustain the conclusion of the Circuit Judge (*Bentham* v. *Smith,* Cheves Eq., 33; *Aaron* v. *Beck,* 9 Rich. Eq., 411, and *Wilson* v. *Gaines,* 9 Rich. Eq., 420) ; and yielding to the authority of those cases, I concur in affirming the decree of the Circuit Judge.

Mr. Justice Gary, *dissenting.* As I am not able to concur in the opinion of Mr. Justice Pope, I will state briefly the grounds of my dissent. The master in his report found the following facts: 1. That on the 2d day of March, 1888, the plaintiff, William F. Humphrey, was by a deed of indenture between George Bliss, of New York, party of the first part, and William F. Humphrey, of Boston, party of the second part, duly appointed trustee for Mary Butler Campbell and Mary Bennett Campbell. 2. That the trust estate consisted of certificate No. 81, of thirty-nine shares or parts in the Coosaw Mining Company. 3. That the trusts upon which the said trust estate was held were as follows: "1st. That the said party of the second part (William F. Humphrey) shall receive and collect the income, profits and dividends as often and whenever the same shall be payable, and after deducting all incidental expenses, shall pay over the same as follows: To Mary Butler Campbell, the income from nineteen of said shares or parts, and to Mary Bennett Campbell, the income arising from twenty shares or parts during their several lives. 2d. *That the said Mary Butler Campbell and Mary Bennett Campbell shall each have full right and legal power to distribute her share of the trust estate by will,* and if either leaves no will, the provisions of the will of the other shall govern the distribution or disposition of the whole of said trust estate." 4. That on the 15th day of August, 1891, Miss Mary Butler Campbell departed this life, leaving of full force and effect her last will and testament, in which said will the said Miss Mary Butler Campbell provided as follows: "First. *I direct the payment of all my just debts and liabilities, particularly the indebtedness now due the Confederate Home of Charleston, S. C.,* of $1,600 held by me in trust for its benefit, and also the sum of $800 due Harriet Poyas Walker, of Charleston, S. C. * * *" (italics ours). Even conceding that Mary Butler Campbell took a life estate in the first instance (though under the authority of *Jackson* v. *Jackson,* 56 S. C., 346, doubt may be entertained upon this question), and further conceding that the

authorities cited (to which may be added the recent case of *Sires* v. *Sires,* 43 S. C., 266,) sustain the general principle announced in the leading and concurring opinions, nevertheless this does not determine the question presented by this appeal. The foregoing principles are wholly inapplicable to this case. The practical question raised by this appeal is whether the direction by the testatrix, Mary Butler Campbell, that all her just debts be paid, "particularly the indebtedness now due the Confederate Home of Charleston, S. C.," can be regarded as an exercise of the power to *"distribute"* her share of the trust estate by will. As I fail to see that these words are susceptible of any other interpretation than that they are a proper exercise of said power, I must dissent from the conclusion announced in the opinion of Mr. Justice Pope.