## 10248

### DUMAS v. CARROLL ET AL.

#### (99 S. E. 801.)

1. Trusts—Termination—Conveyance by Beneficiary—Decree Confirming Title.—Where husband conveyed land in trust for wife to be conveyed by trustee to person designated by wife in will, decree confirming title in wife's grantee was ineffectual to pass title, where neither trustee nor his heir or successor was a party to the proceeding.

2. Trusts—Conveyance by Beneficiary—Legal Title.—Where husband conveyed land in trust for wife to be conveyed by trustee to persons designated in wife's will, wife's deed did not convey legal title; the land title being in trustee.

3. Trusts—Trust Deed—Presumption—Acceptance by Beneficiary.—Where husband purchased land in part with wife's money, and in 1868, by recorded deed, conveyed land in trust for wife to be conveyed by trustee to persons designated in wife's will, it will be presumed that wife, who in 1906 attempted to convey land, knew of and acquiesced in such deed of trust.

4. POWERS—INSTRUMENT OF EXECUTION.—Where instrument creating a power specifies the nature of the instrument by which it may be executed, as where it is to be executed by will, or by deed, the power can be exercised only in the manner specified.

5. JUDGMENT—CONCLUSIVENESS.—A judgment of Court having jurisdiction of the parties in interest is binding upon them until set aside in some manner prescribed by law.

6. COURTS—JURISDICTION—CIRCUIT JUDGE.—One Circuit Judge has no jurisdiction to review and reverse or modify in any material respect the judgment of another.

7. TRUSTS—DESTRUCTION—RIGHTS OF INFANTS.—Trusts cannot be destroyed or altered where made according to law, and where rights of infants or unborn remaindermen are to be affected.

Before MEMMINGER, J., Charleston, —— term, ——. Reversed.

Action by M. Dumas against Thomas W. Carroll and another. Decree for plaintiff, and defendants appeal.

The following is the agreed statement of facts and decree appealed from:

On August 1, 1867, one S. N. Hart conveyed to Robert Fleming the premises 305 King street, and bond and mortgage was given for two-thirds of purchase price, which was satisfied of record March 17, 1869. On July 20, 1868, he executed to John F. Meyers, trustee, a deed to this property which was duly recorded, wherein he recited the purchase from S. N. Hart and terms thereof, that the cash portion and first installment on bond was paid out of moneys belonging to his wife, Anna Dora Fleming, and that thereby a resulting trust was created in said premises for Anna Dora Fleming; that in order to declare the trust which resulted in her favor conveys the property to John F. Meyers, his heirs and assigns forever in trust, for the sole separate use, benefit, and behoof of Anna Dora Fleming, and her heirs, to permit her to collect the rents and profits thereof to and for her sole use; also, in trust that said trustee or his heirs or successors in the trust shall convey the premises to such persons and for such estates as Anna Dora Fleming, by her

last will and testament, shall direct; also, in trust if it be advisable for purpose of paying mortgage debt or change of investment, to sell the property upon written request of Anna Dora Fleming, and reinvest proceeds; usual provision for substitution of trustee.

So far as the records show, Anna Dora Fleming did not consent to this trust.

In 1868 the property was returned for taxes in the name of Anna Dora Fleming, and so continued until her death in 1909. The trustee, John F. Meyers, died many years ago, and no other trustee was ever substituted. Robert Fleming died in 1884, devising his entire estate to Anna Dora Fleming.

Anna Dora Fleming died the 28th day of March, 1909. By proceedings filed July 17, 1909, to which all of the children and grandchildren of Mrs. Anna Dora Fleming then in being were made parties, it is alleged that a press copy of the will of Anna Dora Fleming dated the —— day of December, 1899 (the original having been lost), had been, by written agreement of all of the adult parties interested under the terms of the said will, admitted to probate in the probate Court of Charleston county; and confirmation thereof by the Court is asked, and directed for the distribution of the estate thereunder.

Under the terms of the will so approved, the premises in question was devised as follows:

"Item VI. I give, devise and bequeath my lot of land with the buildings thereon, on the west side of King street, in the city of Charleston, in said State, at present known as No. 305 King street, to my daughters, Lill D. Ellis and Anna F. Norris, born Fleming, as trustees, and the survivor of them in trust for and during the natural life of my son, Robert T. Fleming, to manage the same, and to receive and collect the rents, issues and profits thereof, and after paying the taxes, insurance and for repairs and all necessary expenses thereon, to pay over the net rents, income and profits thereof to my

said son, Robert T. Fleming, for and during the term of his
natural life, and upon the death of my said son, Robert T.
Fleming, I give, devise and bequeath the said lot of land
and buildings to such child or children of my said son,
Robert T. Fleming, as he shall leave living at his death in
equal shares, if more than one, and if only one, the whole
to that one, to have and to hold the same to them, him or her,
their, his or her heirs, absolutely and forever: Provided,
however, That if any child or children of my said son, Robert
T. Fleming, shall have died before him, leaving issue which
shall be living at his death, such issue shall represent his,
her, or their respective parents or parent, and take *per stirpes*
the share or shares, proportion or proportions which such
parent or parents would have taken, respectively, under this
item of my will if living at the death of my said son, Robert
T. Fleming; to have and to hold the same to them, him or
her, their, his or her heirs absolutely and forever. Should
my said son, Robert T. Fleming, however, die leaving no
child or children, nor the issue of any predeceased child or
children living at his death, then and in such case, on the
death of my said son, Robert T. Fleming, I give, devise and
bequeath the said lot of land and buildings thereon to my
daughters, Lill D. Ellis, Eveline B. Nix and Anna F. Norris,
or such one or more of them as shall be living at the death
of my said son, Robert T. Fleming, in equal shares, if more
than one, and if only one, the whole of that one, to have and
to hold the same to them, or her, their or her heirs absolute
and forever: Provided, however, In this case, that if either
of my said daughters shall predecease my said son, leaving
issue which shall be living at his death, such issue shall rep-
resent their, his or her parent or parents and take *per stirpes*
the share or shares, proportion or proportions, which their
his or her respective parent or parents would have respec-
tively taken under this item of my will if living at the death

of my said son, Robert T. Fleming, to have and to hold the same, to them, him or her, their, his or her heirs, absolutely and forever."

In this proceeding Robert T. Fleming claimed that there was other disposition of this property made by his mother more favorable to him, which claim was not established; but in order to settle the estate and avoid litigation, there was a family agreement for a cash allowance to Robert T. Fleming out of the residuary estate amounting to $150 from the share of each adult and $130 from the shares of the minors, and title to the premises was confirmed in the trustees, and same was managed under the terms of the will for the benefit of Robert T. Fleming by trustees appointed by the Court.

In July, 1915, there was placed on record in Book O 27, page 289, Register of Mesne Conveyance office of Charleston county, a deed of conveyance to this property from Anna Dora Fleming to Robert T. Fleming, dated August 18, 1906.

On March 31, 1917, proceedings were filed in the Court of Common Pleas for Charleston county *in re* the same proceedings as above referred to, *Ex parte Robert T. Fleming v. the Same Defendants,* and such additional ones as comprised the descendants of Ann Dora Fleming as had been born subsequent to the preceding suit, and all of the defendants were properly served—the defendants were all the parties then *in esse,* who might, under the terms of the will of Anna Dora Fleming, or under the trust deed in question, have or claim an interest in the premises.

F. K. Meyers was the then acting trustee under the will of Anna Dora Fleming, having been substituted by order of Court for the original trustees named in the will. He was not made a party to these proceedings. He was, however, the master in equity for Charleston county, to whom the case was referred by order of Court, and, therefore, had notice of the proceedings.

The petitioner alleged that the said premises had been conveyed to him in fee by his mother, Anna Dora Fleming, by deed dated the 18th day of April, 1906, and the discovery and recording of said deed as above set forth in Book O 27, at page 288, and that he was the owner in fee by reason of said deed, and prayed that the Court would modify its former decree and confirm his title in fee thereto.

Guardians *ad litem*, were appointed for minors, and all defendants answered.

The defense was raised by one of the defendants in this proceeding that if said Robert T. Fleming ever had any interest in said premises he is now estopped and barred from claiming any right, title, or interest in the same, he having agreed to a settlement and accepted valuable consideration; that the said Robert T. Fleming has no title deed to the premises, and if he has that it is a forgery.

The case was referred to F. K. Meyers, Esq., who was the then acting trustee, who filed a report recommending confirmation of title in fee in the said Robert T. Fleming upon certain conditions; that is, that the said Robert T. Fleming should first pay to the parties in interest a cash consideration in view of the amount allowed him out of the residuary estate of his mother in the original proceeding, fixed in each case at $300. All of the then minors in the original suit having become of age except one, the amount so agreed upon was paid over to the adults, and the amount to be paid to the minor was paid into Court, and by the master paid over to her duly appointed guardian.

By decree dated October 2, 1917, and consented to in writing by all the adult parties individually, and their counsel, title in the said premises was confirmed in the said Robert T. Fleming in fee absolute, free of all trusts.

The said premises were then conveyed by the said Robert T. Fleming to the plaintiff, M. Dumas, on the 15th day of February, 1918, for valuable consideration.

19—112

On April 9, 1918, a written contract, based on valuable consideration, was entered into for the sale of the said premises by M. Dumas to T. W. Carroll, for $13,600 net.

Opinion and Order of Specific Performance: Upon the agreed statement of facts in this case, the Court decides that, while the purchaser's objections to the title are apparently well taken as to form in substance they cannot be sustained. The Court thinks the trustee was a necessary party to the action, wherein the deed was established cutting off the remaindermen who were *in esse,* who were parties, as well as those not then ascertained, but who might inherit at the period of limitation; it being the duty of the trustee, who so made a party, to set up any defense he might have against the deed as holding the legal title and representing remaindermen. However, in this case, the defense the trustee should have set up, and which it is claimed now, on behalf of the purchaser herein, remaindermen not then *in esse* may base a claim upon, was set up in the cause by a party thereto, and was passed upon adversely by the Court. The trustee, therefore, could have done no more, if a party, than was done, and the decision of the Court could have been no different as to the defense being set up by him than as set up by the party. Furthermore, the trustee was also the master to whom the cause was referred, and must have known that this defense was set up, and the Judge who made the decree establishing the deed must have known it; and, therefore, that defense has been heard and rejected by the Court, and the fact established otherwise. Any remainderman attacking the title would be met by the point-blank finding of the Court against the defense the trustee could have made, which defense was in fact made, with knowledge of the trustee and of the Court, though by another person, a party; and to open up that defense now or hereafter would be more in the nature of granting a new trial, which, of course, is out of the question. The suggestion that the decision establishing the deed, and declaring that no trust existed, was the chang-

ing by a subsequent Judge of the decree of a former Judge cannot be sustained, because, while the action to establish the deed was in the cause already adjudicated, it was in all respects a new action, in which all parties were served, and was based upon new allegations and new facts.

The fact found that the deed was genuine, though there are some suspicious circumstances apparent as against it, is credible, because in the first action the parties recognized and acquiesced in some such outstanding right.

Objection A of the answer of the purchaser is not sustained; the deed having declared a resulting trust, the trustee had no power without consent of the beneficiary to declare a resulting trust, the trustee had no power without consent of the beneficiary to declare other trusts.

This Court does not commend the proceedings under which plaintiff herein acquired title, for there are elements therein which are unsavory—no doubt they seemed proper at the time and under the circumstances—but it is upon a consideration of the whole, and the legal effect thereof that this decision is based.

Let a formal decree for specific performance be taken, on the footing of this opinion and as a part hereof.

And it is so ordered, adjudged, and decreed.

*Messrs. Nathans & Sinkler,* for appellant, submit: *That the title to the property in question being vested in F. K. Meyers as trustee, the title is still in him and could not have been divested by a decree of Court in proceedings to which he was not a party:* 22 S. C. 323; 23 S. C. 295; 29 S. C. 138; 66 S. C. 161. *This Court has never gone so far as to hold that remaindermen not in esse could be barred by a suit in which the destruction of the fee was involved even when all defenses which such remaindermen might make at the proper time, were made by other parties to the cause:* 24 S. C. Eq., p. 1. *The fact that the trustee who was the master to whom the cause was referred and the Judge who made the decree*

*establishing the deed must have known the defense which might have been set up by the trustee, had been set up by one of the defendants and was before the Court could not remedy the fatal defect of not making the trustee a party:* 97 S. C. 116.   *By the decree in the first proceedings the title was vested in trustees, of whom F. K. Meyers is successor. The matter was then res judicata:* 63 S. C. 406.   *The decree in the second suit was violative of the first decree:* 87 S. C. 127.   *The making the trustee a party defendant in a suit for specific performance could not cure the defect of not having been made to a former proceeding involving the title, in which proceeding he should have been joined as a necessary party:* 36 Cyc. 767.   *The use was not executed:* 23 S. C. 296; 24 S. C. 592.

*Mr. H. L. Erckman,* for respondent, submits: *A trustee holding legal title can be estopped as any other owner of property.   Adverse possession can run against him:* 78 S. C. 334.   *Adverse possession will bar all remaindermen under the trust deed:* 50 S. C. 127.   *97 S. C. 116, does not apply to the case at bar.   All parties were before the Court (the trustee being present and consenting) when the decree of October 2, 1917, was made, and it is res judicata and binging on all parties:* 94 U. S. 351.   *All persons interested in the subject matter of a suit for specific performance may be properly joined as parties:* 36 Cyc., p. 767; 23 Fed. Rep., p. 721.   *The trustee, John F. Meyers, in his deed, distinctly declares that a resulting trust was created in the premises for Anna Dora Fleming could not declare a trust different from the resulting trust:* 24 S. C. 592.   *The Court of equity had full power to appoint F. K. Meyers as trustee, and there was not need for the heirs at law of John F. Meyers to be before the Court:* 35 S. C. 428.

July 15, 1919.

The opinion of the Court was delivered by Mr. Justice Hydrick.

The statement of facts upon which the case was heard, which will be reported, shows that plaintiff has not the legal title to the lot which he contracted to convey. The deed from Robert Fleming to John F. Meyers (1868) was upon trust, *inter alia,* "that said trustee, or his heirs or successors in the trust, shall convey the premises to such persons and for such estates as Anna Dora Fleming, by her last will and testament, shall direct." It is clear, therefore, that the trust was not executed, and that the legal title has never passed out of the trustee, John F. Meyers, and his heirs. In *Huckabee v. Newton,* 23 S. C. 291, it was held that "In actions affecting the fee in real estate, where the legal title is in a trustee, he is a necessary party to the action, or, if he be dead, his heirs."

In that case, there was a deed to a trustee, his heirs and assigns, to permit L. to enjoy the land for her life, without rent, and at her death to convey the same to her children then living, and to the children of such as were dead. Held, "that the remainder was contingent, and the trust was not executed on the death of L., and in an action for partition, the trustee being dead, his heir was a necessary party." Here, as there, the trustee had a duty to perform, to wit, to convey to such persons as Mrs. Fleming by her will should direct. Therefore the trust was not executed. The decision in *Huckabee v. Newton* was reaffirmed in *Ayer v. Ritter,* 29 S. C. 135, 7 S. E. 53, where it was held that the *cestui que trust* to whom it was the duty of the trustees to convey, under an executory trust, could not maintain an action to recover possession of the land, in the absence of a deed from the trustees, as he had no legal title. See, also, *Steele v. Smith,* 84 S. C. 464, 66 S. E. 200, 29 L. R. A. (N. S.) 939. As neither John F. Meyers, who has long been dead, nor his heirs, nor any legally substtuted trustee, under the deed of Robert Fleming to John F. Meyers, was before the Court in any of the proceedings mentioned, the decree of the Court was ineffectual to affect or pass the

legal title, which is still, under the authorities above cited, and numerous others that might be cited, in the heir of John F. Meyers.

It follows that the alleged deed of Mrs. Fleming to her son, Robert T. Fleming, in 1906, did not convey the legal title, since it was not in Mrs. Fleming. It has been suggested, however, that, as Robert Fleming, the elder, 2, 3 acknowledged that a part of the purchase money for the lot was paid with money belonging to his wife, Mrs. Anna Dora Fleming, a trust resulted in her favor. True, but only *pro tanto,* and even to that extent it gave her only an equitable title. The legal title was still in Robert Fleming, and was conveyed by him to John F. Meyers, and is still in the heir of John F. Meyers. But the deed of Robert Fleming to John F. Meyers declares the trust, so that there is no need to resort to the equitable doctrine of resulting trust. That deed was spread upon the record, and after such great lapse of time, it must be presumed that Mrs. Fleming knew of and acquiesced in it. At any rate, no matter what may have been her equitable right in the premises, she never had the legal title.

In *Manning v. Screven,* 56 S. C. 78, 34 S. E. 22, the Court said:

"A resulting trust arises in favor of one who pays the purchase money of an estate and takes title in the name of another, because of the presumption that he who pays for a thing intends a beneficial interest therein for himself, but this presumption cannot arise when a contrary intent appears, since it is based on the absence of evidence of such contrary intent. Perry on Trusts, sec. 124; Adams Equity (7th Ed.), pp. 33, 34. In this case the trust deed expressly defines the estate intended for Frances Knox, and it further appears that the consideration paid by her secured, also, an independent covenant by the life tenant to provide for her a comfortable home and support on said land during her life or until the death of the life tenant."

So here the trust deed expressly defines the estate intended for Anna Dora Fleming, and no other intention or estate can be presumed. It follows that her rights in the property were equitable only, and that her disposition of it, to be valid, must have been made in accordance with the terms of the deed, under which her power of disposition was to be "by her last will and testament."

It is well settled that "Where the instrument creating a power specifies the nature of the instrument by which it may be executed, as where it is to be executed by will, or by deed, the power can be exercised only in the manner specified." 21 R. C. L. 793.

The language above quoted is rested in part upon the decision of this Court in *Bentham v. Smith,* Cheves Eq. 33, 34 Am. Dec. 599, which fully supports the text, and it is unquestionably the law in this State. See *Manning v. Screven,* 56 S. C. 78, 34 S. E. 22. See, also, the opinion of Chief Justice McIver, in *Humphrey v. Campbell,* 59 S. C. 47, 37 S. E. 26, and *Aaron v. Beck,* 9 Rich. Eq. 411, and *Wilson v. Gaines,* 9 Rich. Eq. 420. It follows that, as Mrs. Fleming had no power to dispose of the land by deed, her deed of 1906 was ineffectual to convey the legal title.

It may be said, however, that her right to dispose of the property by deed is *res judicata,* as the Court sustained the deed in the proceeding had in 1917. There are two reasons why that contention cannot be sustained. First, in neither of those proceedings was the holder of the legal title before the Court, and it follows that the judgment was ineffectual to affect or pass the legal title. Second, in the proceeding had in 1909, the Court decreed against Robert Fleming as to any other interest than that given him under his mother's will. A judgment of the Court, having jurisdiction of the parties in interest, is binding upon them, until set aside in some manner prescribed by law. The Code provides that a judgment is a final determination of the rights of the parties, and the only mode of

reversing or modifying it is by appeal. Hence it is settled by numerous decisions of this Court that one Circuit Judge has no jurisdiction to review and reverse or modify in any material respect the judgment of another. That does not mean that a judgment may not be attacked and set aside for fraud, accident, or mistake, which means, of course, a mistake of fact and not one of law, or that a new trial may not be granted for after-discovered evidence. But there is nothing in the record to show that the judgment of 1909 was altered in 1917 for any of the reasons above stated. The nearest approach to a valid ground of interference with it is the mere inference that the deed of 1906 was discovered after the proceeding in 1909. But there is absolutely nothing in the record to show that it was "after-discovered evidence" in the legal sense of the phrase, and discovered under such circumstances as entitled the party to a new trial. Until such a showing was made, the Judge who heard the proceeding in 1917 had no jurisdiction to disturb the judgment of 1909. It would be extremely dangerous, and introduce untold mischief into the administration of justice, if it were otherwise. But in any view of the case, as has already been shown, as the holder of the legal title was not before the Court in either proceeding, the judgment in neither affected it.

It has been held by this Court, in cases too numerous to mention, that the Courts have no power to make or modify deeds or wills made according to law. If the right, which is deemed by most people a very sacred one, of disposing of one's property as he may see fit is to be preserved in this State, the Judges must resolutely set their face against a practice, which is said to be too common, of destroying trusts created by will or deed, or interfering with the testator's or grantor's disposition thereof by consent decrees, especially where the rights and interests of infants or contingent remaindermen are affected. Where the parties are *sui juris* and their rights alone are affected,

they may, of course, do as they please. But where the rights of infants, or unborn remaindermen, who are only constructively before the Court, are to be affected, the Court should see to it that theirs are not injuriously affected. It is the duty of the Courts to preserve and not destroy or allow the parties in interest to destroy or alter trusts and other dispositions of property, where the same have been made and created according to law, and violate no rule of law; otherwise the *jus disponendi* is of no value.

It must not be understood that the Courts should not exercise such power over trust estates, which is a well recognized feature of equitable jurisdiction, as may be necessary to prevent them from going to waste, or to make necessary improvements for the maintenance of beneficiaries, or to change investments, and the like. But even these powers are to be exercised with great caution, and generally so as to preserve rather than to destroy trust and other dispositions of property.