THE ESTATE OF SAMUEL HIRSCH, DECEASED, LENA HIRSCH, BEATRICE ABRAMS, EVELYN LIROFF AND ALICE HARKAVY, EXECUTRICES, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19585. Promulgated March 30, 1950.

*Israel Harkavy, Esq.*, for the petitioners.
*J. Richard Riggles, Jr., Esq.*, for the respondent.

510

512

OPINION.

ARUNDELL, *Judge*: The sole issue in this case is whether property jointly owned by decedent and his wife, and the proceeds of insurance policies taken out by decedent on his life, in which his wife was named as the sole beneficiary, which assets were properly included in the decedent's gross estate for Federal estate tax purposes, may be treated as "property subject to claims" in determining the allowable deductions under section 812 (b) of the Internal Revenue Code.*

Prior to the enactment of section 405 (a) of the Revenue Act of 1942, which amended section 812 (b) to read in its present form, all valid claims were deductible from the value of the property includible in decedent's gross estate for Federal tax purposes, even though the estate might be "insolvent" so far as the decedent's creditors were concerned, and all or a part of such claims could never in fact serve to reduce the gross estate. This situation usually arose from the following combination of circumstances: The gross estate of a decedent for Federal tax purposes consists not only of the property actually

---

*SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

 *  *  *  *  *  *  *

 (b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

  (1) for funeral expenses,

  (2) for administration expenses,

  (3) for claims against the estate,

  (4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and

  (5) reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * * There shall be disallowed the amount by which the deductions specified in paragraphs (1), (2), (3), (4), and (5) exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this section the term "property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate; and, for the purposes of this definition, the value of the property shall be reduced by the amount of the deduction under the next sentence attributable to such property.

owned by the decedent at his death, but also of other property disposed of during his life, such as transfers made in contemplation of death, transfers "intended to take effect in possession or enjoyment at or after his death," jointly owned property to the extent of his contribution to the purchase of such property, the proceeds of life insurance, etc., which property is generally not included in the decedent's estate for local probate purposes. It may also occur under the provisions of law respecting creditors' rights in the jurisdiction in which the decedent's estate is being administered that a considerable part of the property includible in the decedent's estate for Federal estate tax purposes is not subject to or is specifically exempt from the payment of claims of decedent's general creditors. Moreover, there may exist claims of certain creditors which may be satisfied only from specific property, the value of which at decedent's death is less than the amount of such claims. See *Commissioner* v. *Windrow*, 89 Fed. (2d) 69; *Commissioner* v. *Lyne*, 90 Fed. (2d) 745; *Commissioner* v. *Hallock*, 102 Fed. (2d) 1.

To remedy this situation, section 812 (b), as amended, provides that in the computation of a decedent's net estate, deductions shall be allowed from the value of the gross estate for funeral and administration expenses, claims against the estate, and various other items of expense and indebtedness as are allowed by the laws of the jurisdiction under which the estate is being administered, but specifically provided that such deductions shall not be allowed in an amount in excess of the value at the time of decedent's death of the "property subject to claims" includible in the gross estate.

The Congressional intent underlying the change made in section 812 (b) is best expressed by the statement of the Committee on Ways and Means in House Report No. 2333, 77th Cong., 1st sess., 1942–2 C. B. 372, 492, which reads in part as follows:

Section 405. Deductions Not Allowable in Excess of Certain Property of Estate.

This section amends section 812 (b) of the Code in order to overcome the construction of existing law that the full amount of the claims against a decedent's estate is deductible in computing the statutory net estate without reference to the value of the property subject to payment. Since the gross estate determined for estate tax purposes contains many items of property which are not in the hands of the executor for local probate purposes, the allowance as deductions of claims in excess of the value of property subject thereto reduces the statutory net estate by claims which do not actually reduce the gross estate and permits the tax-free transfer of assets to the decedent's beneficiaries.

Under section 812 (b), as amended by this section, amounts otherwise deductible under section 812 (b) are disallowed to the extent that they exceed the value at the time of the decedent's death of property subject to claims. "Property subject to claims" is defined as property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate.

As the question presented is one of first impression and our decision must be based upon the facts presented in this particular case, it is appropriate that we briefly review what we consider to be the salient facts. The debts of decedent at the time of his death totaled $62,585.23, including delinquent Federal income taxes and interest thereon in the amount of $40,957.23 and taxes due the State of New York in the amount of $12,202.68. Joint returns had been filed by decedent and his wife in reporting decedent's income for Federal and state purposes. At his death, decedent owned assets *in his own name* consisting of real estate, stocks and bonds, mortgages, notes and cash, and other miscellaneous property of a total value of $26,404.15. In addition thereto, there was includible in decedent's gross estate for Federal tax purposes insurance on decedent's life in the total face amount of $14,200.16, of which decedent's wife was the sole beneficiary, and other property of the value of $235,990.30, consisting chiefly of stocks, bonds, and bank accounts held in the joint names of decedent and his wife. Of the total deductions of $62,585.23 claimed by the executrices of decedent's estate, respondent allowed only $26,404.15, representing the value of the assets includible in the decedent's estate held in his own name, and disallowed the remaining deductions in the amount of $36,181.08.

It has been held that Federal income taxes paid by an estate in respect to income received by a decedent during his lifetime, together with interest accrued to the date of his death, are deductible for estate tax purposes. See *Old Colony Trust Co.* v. *United States*, 15 Fed. Supp. 417; *Estate of William Macpherson Hornor*, 44 B. T. A. 1136; affd., 130 Fed. (2d) 649. Moreover, in the instant case respondent, in allowing deductions to the extent of $26,404.15, has obviously conceded the deductibility of some part of the amounts paid by the executrices in discharge of taxes owed by the decedent to the Federal Government and the State of New York, as the administration and funeral expenses and other debts were in an amount less than $10,000.

Essentially, respondent's basis for limiting the deductions claimed to the amount of $26,404.15 is his contention that the assets held in decedent's name represented the only property includible in decedent's gross estate which would "bear the burden of the payment of such deductions in the final adjustment and settlement of the estate" within the meaning of section 812 (b). Respondent's determination is correct only if it can be held that the jointly held property in the amount of $235,990.30 includible in decedent's gross estate was not "subject to claims" within the meaning of section 812 (b).

It is clear that the jointly owned assets which passed to decedent's wife on his death were "includible in the gross estate of the decedent" for Federal tax purposes, regardless of the fact that under New York probate law such assets did not constitute assets of the decedent's

estate for local probate purposes. However, the fact that such jointly held property passed directly from the decedent to his surviving spouse rather than passing through the decedent's estate for administration does not, in itself, relieve such assets from being subject to the claims of creditors where, as here, the decedent until the time of his death possessed assets which were subject to and more than ample to satisfy the claims of his creditors. It was stated by the court in *Beakes Dairy Co.* v. *Berns*, 112 N. Y. S. 529, and *In re Weinberg's Estate*, 296 N. Y. S. 7, which cases upheld the right of creditors of a decedent's estate to reach funds deposited by the decedent during his lifetime in a so-called "Totten trust," that:

* * * It seems that the accident or fact of death turns that which may not have been and could not be found to be the intention of the deceased into his intention. But the gift is completed only at the instant of death. Up to that time the money is that of the depositor to draw out and do with it as he pleases. That being so it must be subject to his creditors during his lifetime, and for the same reason after his death also. One may no more get his money out of reach of his creditors after his death by depositing it in such a way, not to belong to his cestui until he dies, than he could do so by means of a will giving it to such cestui. His right to the absolute disposition of it during his lifetime makes it his and therefore subject to his creditors. * * *.

The right of creditors to attack such transfers rests upon the general rule recognized in New York that a voluntary transfer of property by a husband to his wife without consideration, leaving the husband insolvent as to his existing creditors, is presumed to have been made in fraud of creditors and may be set aside regardless of the fact that the transferor may establish the absence of any actual fraudulent intention. *Ga Nun* v. *Palmer*, 216 N. Y. 603; 111 N. E. 223; *Horowitz* v. *Weinberg*, 281 N. Y. S. 644; *Feist* v. *Druckerman*, 70 Fed. (2d) 333; *Seligson* v. *Sandner*, 42 Fed. Supp. 415 (1941). See sections 270–276, inclusive, of the Debtor and Creditor Law, McKinney's Consolidated Laws of New York Ann., art. 10, p. 233.

Applying this rule of law to the instant case, we find that the parties are agreed that no consideration passed to decedent from his wife in connection with the establishment of the joint bank accounts or the purchase of the various securities held in their joint names. Thus, it remains for us to determine from the nature of a grantor's interest in property jointly held under New York law whether the decedent's conduct in permitting most of his personal wealth to pass to his wife by survivorship constituted a transfer rendering his estate "insolvent" as to creditors.

The general rule as to the ownership of personal property held in the joint names of husband and wife under the law of the State of New York was set out in *Belfanc* v. *Belfanc*, 300 N. Y. S. 319, 323; affd., 278 N. Y. 563; 16 N. E. (2d) 103, as follows:

\* \* \* A chose in action, whether a bank account, a bond and mortgage, a note, or other investment in personalty, taken in the joint names of husband and wife upon the direction of the husband, confers upon the wife the right to succeed by survivorship, when the security arises from the husband's sole money or property, in the absence of proof of a different intent declared at the time of execution. From such a transaction it is presumed that the husband intended to benefit his wife with the ownership of the property upon his death, as it were, by way of gift causa mortis, subject only to the possible rights of creditors. And during his life, the husband retains his complete ownership, control, and right of disposition, and the wife has no interest therein enforceable against him. [Cases cited.]

This rule was subsequently applied in *In re Peters*, 50 N. Y. S. (2d) 573; *In re Fliegelman's Will*, 55 N. Y. S. (2d) 139; and *In re Draser's Estate*, 81 N. Y. S. (2d) 648.

The intention of decedent at the time of the establishment of the joint bank accounts and the purchase of the various securities in the joint names of himself and Mrs. Hirsch is not disclosed by the record. However, even if we are to assume that it was decedent's intention at that time to make a complete and irrevocable *inter vivos* gift of a one-half interest in such assets to his wife, it is clear that the remaining one-half interest of the approximate value of $118,000 was thereafter vested in decedent and subject to his right to dispose of it by way of sale, assignment, gift, mortgage, or pledge. See *In re Hoffman's Estate*, 25 N. Y. S. (2d) 339. Therefore, so far as decedent's creditors were concerned, his death was the "effective moment of the devolution" of his full interest in the jointly held assets to his wife and was the event which for the first time rendered his estate "insolvent" as to their claims. See *In re Weinberg's Estate, supra; In re McKelway's Estate*, 221 N. Y. 15; 116 N. E. 348; *Beakes Dairy Co.* v. *Berns, supra*.

An executor or administrator under New York law is primarily a trustee for creditors, and section 19 of the personal property law places an obligation upon an executor or administrator, for the benefit of creditors, to disaffirm, treat as void, and resist any act done or transfer or agreement made in fraud of the rights of any creditors. Moreover, an executor or administrator may be held liable for any acts or omissions with respect to the recovery of assets transferred by a testator in fraud of his creditors. *In re Donellan*, 75 N. Y. S. (2d) 712; *In re Sanchez' Estate*, 58 N. Y. S. (2d) 230; *In re Ungerfeld's Estate*, 45 N. Y. S. (2d) 781; *In re Turner's Estate*, 38 N. Y. S. (2d) 769; *In re Weinberg's Estate, supra*, and cases cited therein. On the authority of these cases, it is our conclusion that under the law of New York any and all of decedent's creditors, including the Federal or state tax authorities could have compelled the decedent's wife, as executrix, to recover and bring into the decedent's estate a sufficient part of the joint assets to satisfy their claims against his estate.

The evidence shows that decedent's wife did in fact surrender to the estate so much of the assets she and decedent had held jointly as was necessary to discharge all indebtedness of the estate, including the deficiencies in Federal and state income taxes. Respondent characterizes the wife's use of the joint assets for the payment of claims against the estate as the act of a volunteer. However, the assessments made by the Commissioner and the State Department of Taxation and Finance were made against decedent's estate, as well as Mrs. Hirsch individually. In paying these claims, checks were issued and signed "Estate of Samuel Hirsch, Deceased, Lena Hirsch, Executrix." There is not the slightest suggestion that in surrendering the jointly held assets to the estate for the purpose of discharging these obligations decedent's wife was acting other than in complete good faith and in accordance with the obligation imposed upon her under section 19 of the personal property law, *supra*. Moreover, as the state income tax returns were joint returns of decedent and his wife, there can be no doubt but that the jointly held property includible in decedent's estate was subject to the tax claims of New York State even after decedent's death. The Federal tax returns from which the tax liability arose were likewise joint returns and therefore the joint assets in question would also have been subject to the claims of the collector of internal revenue whether we are to regard them as enforceable under the laws of New York or by virtue of a Federal statute such as section 311 of the Internal Revenue Code.

For the reasons stated above, it is our opinion that the joint assets in question constituted property includible in the decedent's gross estate which, or the avails of which, under the applicable law, would bear the burden of the payment of such claims in the final adjustment and settlement of the decedent's estate within the meaning of section 812 (b) of the Internal Revenue Code.

The facts in the instant case were completely stipulated and no oral testimony was offered at the hearing. In view of the stipulation of the parties that the liability for delinquent Federal and New York State income taxes was "a liability due from the decedent" and that the indebtedness to the collector of internal revenue and the New York Department of Taxation and Finance is "the indebtedness of the decedent," we do not think that the Commissioner may now be heard to say that some part of the taxes paid by decedent's estate may be attributable to the wife. There is no suggestion in the record that any part of the delinquent income flowed from separately owned property of the wife or from any services rendered by her. The deficiency appears to be based upon income of the decedent computed on a net worth basis. Where a proceeding is submitted on a stipulation of facts and no specific issue is made that the decedent's estate would be entitled to contribution from the widow for income taxes incurred on the joint

returns, we can not and do not assume that that question has been presented to us for decision.

It is our conclusion that the deductions taken by the petitioner in the amount of $62,585.23 should be allowed. Inasmuch as the property in decedent's own name at his death and the jointly held property included in the gross estate exceed the total of the claims, we need not concern ourselves with the insurance proceeds of $14,200.16 payable to the wife.

Reviewed by the Court.

*Decision will be entered under Rule 50.*