ESTATE OF HERBERT JERMAIN SLOCUM, THE SOUTH CAROLINA NATIONAL BANK OF CHARLESTON AND GEORGE L. BUIST, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41690. Promulgated January 14, 1954.

*Jack White, Esq.*, for the petitioner.
*A. F. Barone, Esq.*, for the respondent.

OPINION.

TIETJENS, *Judge:* The primary issue is a narrow one. The applicable section of the Internal Revenue Code with the pertinent parts italicized appears in the margin.[1] The purpose of section 812 (b) as amended, was thoroughly discussed in *Estate of Samuel Hirsch*, 14 T. C. 509. The question in this case is whether the property subject to the power of appointment which the decedent exercised in his will was property "subject to claims" which "under the applicable law" would bear the burden of the payment of the claimed deductions in the final adjustment and settlement of the estate. "The applicable law," according to Regulations 105, section 81.29 means the "laws of the jurisdiction under which the estate is being administered." Both parties agree, therefore, that we must look to the law of South Carolina for the answer.

The petitioner contends that this particular proposition of law has not been directly passed upon by the South Carolina courts and he cites *United States* v. *Field*, 255 U. S. 257, and the cases collected and

---

[1] SEC. 812. NET ESTATE [As amended by Pub. L. No. 18, Mar. 17, 1941; secs. 403, 405, 406, 407, 408, 409, 1942 Act; sec. 511 (a), 1943 Act].

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \* \* \*

(b) EXPENSES, LOSSES, INDEBTEDNESS, AND TAXES.—Such amounts—

    (1) for funeral expenses,

    (2) for administration expenses,

    (3) for claims against the estate,

    (4) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, and

    (5) reasonably required and actually expended for the support during the settlement of the estate of those dependent upon the decedent,

as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or property taxes not accrued before his death, or any estate, succession, legacy, or inheritance taxes. The deduction herein allowed in the case of claims against the estate, unpaid mortgages or any indebtedness shall when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; except that in any case in which any such claim is founded upon a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in subsection (d) for the purposes specified therein, the deduction for such claim shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under subsection (d) if such promise or agreement constituted a bequest. *There shall be disallowed the amount by which the deductions specified in paragraphs (1), (2), (3), (4), and (5) exceed the value, at the time of the decedent's death, of property subject to claims. For the purposes of this section the term "property subject to claims" means property includible in the gross estate of the decedent which, or the avails of which, would, under the applicable law, bear the burden of the payment of such deductions in the final adjustment and settlement of the estate;* and, for the purposes of this definition, the value of the property shall be reduced by the amount of the deduction under the next sentence attributable to such property. There shall also be deducted losses incurred during the settlement of estates arising from fires, storms, shipwrecks, or other casualties, or from theft, when such losses are not compensated for by insurance or otherwise and if at the time of the filing of the return such losses have not been claimed as a deduction for income tax purposes in an income tax return.

commented on in 41 Am. Jur., Powers, sec. 15, as authority for the "general rule" that property, which is the subject of a general power of appointment, is in equity assets for the payment of creditors of the donee's estate if his own estate is insufficient to pay them, where he exercises the power by deed or will, and appoints the property to others.

Our study of the problem indeed convinces us that there is a so-called general rule as contended for by the petitioner. 41 Am. Jur., *supra;* and cases annotated in 59 A. L. R. 1510, 97 A. L. R. 1071, and 121 A. L. R. 803. Also see American Law Institute Restatement, Property, vol. 3, sec. 330 ; 27 Va. L. Rev. 1052.

Nevertheless, there is also a minority rule, and among the cases supporting this rule we find *Rhode Island Hospital Trust Co.* v. *Anthony*, 142 Atl. 531, and *St. Matthews Bank* v. *De Charette*, 83 S. W. 2d 471. In these cases the Supreme Court of Rhode Island and the Court of Appeals of Kentucky, respectively, carefully analyze the proposition of law here under consideration and both refer to the South Carolina decisions as being contrary to the so-called general rule.

*Humphrey* v. *Campbell*, 59 S. C. 39, 37 S. E. 26, appears to be the leading South Carolina case. Though the petitioner argues that this decision can be distinguished on its facts, we are of the opinion it is pertinent here. That case involved property in which the donee of the power of appointment also held a life estate. In deciding that the appointed property was not subject to payment of the debts of the decedent the court said :

Further, a power of appointment by will is provided under the deed of trust to said shares by Miss Mary Butler Campbell, whereby it is apparent that said Miss Mary Butler Campbell can exercise such power of appointment by will alone. Such being the case, it is manifest that Miss Campbell, or her estate itself, can derive no control of such trust estate; for the simple reason that her exercise of appointment is by will alone, which operates only after her death, and the appointees under her will are not such as the law of descent would provide. Suppose proceedings had been commenced in Miss Mary Campbell's lifetime to compel the execution of a will by her to her executor to pay her debts; would not the court have dismissed such a complaint the moment it was presented? Then, if her power of appointment could not have been coerced while in life, with how much more reason is it manifest that such power of appointment could not be controlled by a court after her death !

In a concurring opinion, McIver, C. J., indicated a preference for the "well-settled English rule" (the general rule) but he stated that there were at least three South Carolina cases which, as he understood them, sustained the conclusion reached by the court.

We are not called on to make a choice between the "general" or the "minority" rule. Our function is to determine what the South Carolina law on the subject is.

So far as we can ascertain the *Humphrey* case is still the law of South Carolina and pursuant to our understanding of what it holds, we are of the opinion that the appointed property in this case was not subject to the claims of decedent's creditors. Accordingly, the respondent's action in limiting the claimed deduction is correct.

The petitioner argues further that the property over which the decedent held the power of appointment could under the facts in the present case be subjected by a court of equity to the debt for which it was "assigned" as security by the decedent before his death, since in addition to the assignment "the volunteer to whom decedent appointed such fund was an accommodation maker of the notes representing the debt." This may be true, but it seems to us to beg the question. If the property could be reached to satisfy the debt here involved, it would be because the property became Anita's by virtue of the decedent's exercise of the power of appointment in her favor coupled with the fact that she herself was also liable for the debt. In other words, it would be because the property was subject to the claim of Anita's creditor and not because it was subject to a claim against the decedent or his estate.

Our disposition of the primary issue makes it unnecessary for us to pass on the subsidiary question set out in our preliminary statement.

*Decision will be entered for the respondent.*